**BROOKSHIRE GROCERY COMPANY, d/b/a Brookshire's Food Stores, Appellant,**

v.

**Mary Frances TAYLOR, Appellee.**

**No. 06–02–00122–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Jan. 15, 2003.

Decided April 1, 2003.

---

**818**

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellant.

J. Stephen Walker, The Moore Law Firm, LLP, Paris, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

This is a slip and fall case Mary Frances Taylor filed against Brookshire Grocery Company, d/b/a Brookshire's Food Stores. Both parties filed motions for summary judgment. The trial court granted Taylor's motion for partial summary judgment on the issue of liability, but denied Brookshire's no-evidence motion for summary

judgment. A trial was held to determine damages only, and the jury awarded Taylor $103,667.65. Brookshire raises the following issues on appeal: (1) Did Taylor establish the elements of premises liability as a matter of law? (2) Is the affidavit of Dewayne Jenkins some evidence of ordinary care by Brookshire which creates an issue of material fact, thereby defeating Taylor's motion for partial summary judgment? and (3) Did Taylor produce some evidence of constructive knowledge of a dangerous condition in response to Brookshire's no-evidence motion for summary judgment?

Taylor slipped and fell on a wet substance in the delicatessen (deli) section of the Brookshire store. The fall injured Taylor's left knee, requiring surgery the next day. Taylor testified in deposition she did not know how the substance got on the floor, who put it there, or how long it had been there. But, two Brookshire employees, the assistant manager and a deli worker, testified by depositions that after the fall they saw a puddle of water. The assistant manager also said he saw a partially melted ice cube in the puddle. There was a Coke dispenser in the area of Taylor's fall. The deli employee first testified that the dispenser caused ice to fall on the floor on a daily basis. She later qualified that testimony by saying, if not daily, then "fairly regular." She also testified that "little kids are going to spill ice" and agreed that even adults are prone to spill ice from time to time.

The surface of the floor in this Brookshire store is tile. The support for the Coke dispenser rested on the tile floor. There was one rectangular mat, approximately three feet wide, lying on the floor, parallel with the front of the support for the Coke dispenser. Facing the dispenser, the right edge of the mat lined up evenly with the right edge of the support for the

dispenser, and there were two similar mats, lying end to end, to the right of the Coke dispenser, parallel with the front of the deli. Deposition testimony showed there was a gap of exposed tile floor between the mat in front of the Coke dispenser and the other two mats. The puddle of water where Taylor fell was on the tile floor just past the mat in front of the dispenser. Brookshire's assistant manager agreed that the store could have put an additional mat to cover the gap of exposed tile between the existing mats and that it could have also put an additional mat in front of the Coke dispenser, making it harder for fallen ice to get to the tile floor. The store manager testified that the store could have used warning signs in this area and that the idea of relocating the Coke dispenser to the center of the counter, so that it would be more to the middle of the mat, "really makes sense." Taylor contends the Coke dispenser was a dangerous condition because it was improperly placed with inadequate matting and no warning signs.

▮▮▮ An invitee enters onto another's land with the owner's knowledge and for the mutual benefit of both parties. *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex.1975). A premises owner owes an invitee a duty to exercise reasonable care to protect such invitee from dangerous conditions in the store if the conditions were known or discoverable to the owner. *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). When an owner has actual or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to an invitee, such owner has a duty to take whatever action is reasonably prudent under the circumstances to reduce or eliminate the unreasonable risk. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983).

This duty toward the invitee, however, does not make the owner an insurer of the invitee's safety. *Gonzalez*, 968 S.W.2d at 936. To prevail under a premises liability claim, an invitee must prove (1) actual or constructive knowledge of some condition on the premises by the owner/operator; (2) that the condition posed an unreasonable risk of harm; (3) that the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992).

The two parties in this case disagree about what should be defined as the dangerous condition. Taylor complains Brookshire has "inaccurately limited the definition of 'dangerous condition' to include only the particular melted ice cube on which Mrs. Taylor fell." Taylor asserts that the primary basis for her negligence claim is that "Brookshire's created the dangerous condition—a Coke dispenser with inadequate matting, improper placement and no warning signs—that was regularly causing ice to fall on the tile floor, posing a danger to customers." From Taylor's perspective, the Coke dispenser was the dangerous condition; from Brookshire's point of view, the puddle was the dangerous condition.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). Where the motion is supported by affidavits, depositions, and other extrinsic evidence sufficient on their face to establish facts which, if proven at trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or must

justify its inability to do so and seek appropriate protection. *Allen v. W. Alliance Ins. Co.*, 162 Tex. 572, 349 S.W.2d 590, 594 (1961). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant must be taken as true, and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49.

The Texas Supreme Court has said a slip and fall plaintiff satisfies the notice element of a claim by establishing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew the substance was on the floor, or (3) it is more likely than not the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex.2002). Brookshire contends Taylor produced no evidence of its actual knowledge of the specific water on the floor at the time of the accident or of how long the water was actually on the floor.

If a plaintiff relies on circumstantial evidence to prove constructive knowledge of a dangerous condition, then the Texas Supreme Court has required that the evidence establish it is more likely than not the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition. *Gonzalez*, 968 S.W.2d at 936.

In *Reece*, the court reaffirmed the importance of the "time-notice rule" as the best indicator of whether the owner had a reasonable opportunity to discover and remedy a dangerous condition; without some temporal evidence, there is no basis on which the fact-finder can reasonably assess the opportunity the premises owner had to discover the dangerous condition. *Reece*, 81 S.W.3d at 816. In this case, there was no evidence of how long the

water had been on the floor; therefore, Brookshire contends Taylor failed to establish the temporal element of constructive knowledge, which causes Taylor to fail in establishing the knowledge element of premises liability, making summary judgment inappropriate.

Taylor, on the other hand, contends the placement of the Coke dispenser on the floor with inadequate matting around it, and with no warning signs, was the dangerous condition, not just the particular piece of ice on the floor. Brookshire acknowledges adding additional mats and moving the Coke dispenser to the middle of the counter would make it much more unlikely that ice would get on the tile floor. The deli employee acknowledged in her deposition that, had there been another layer of mats in place at the time of Taylor's fall, the ice would have been on the mat instead of the tile floor. Moreover, the deli employee said Brookshire employees had to clean up ice from the floor on a regular basis. Even so, there were no warning signs in the area. Taylor contends the evidence establishes that the melted ice on which Taylor fell came from the Coke dispenser in question and that Brookshire knew this specific machine was causing a specific risk in the deli area because of the ice falling on the floor.

In *Corbin*, the Texas Supreme Court made clear that, in a slip and fall case, the dangerous condition can be defined more broadly than the particular substance on the floor. *Corbin*, 648 S.W.2d at 296. In *Corbin*, the invitee slipped and fell on a grape that had fallen from a self-service grape display. *Id.* at 294. Safeway admitted it knew of the unusually high risk associated with its grape display: an open, slanted bin above a green linoleum tile floor. *Id.* at 296. But, Safeway argued it was not obligated to protect customers from the acts of other customers in causing grapes to fall to the floor, regardless of whether those acts were foreseeable. *Id.* The Texas Supreme Court disagreed with Safeway's assertion that the only duty it owed its customers was to pick up whatever objects it found or should have found on the floors of the store. *Id.* The court further stated that the foreseeability of the harmful consequences resulting from the particular conduct is the underlying basis for liability in all negligence actions. *Id.* Corbin's right to recover depended on showing that Safeway had knowledge of the foreseeable harm of some course of conduct or method of operation. *Id.* The court did not require Corbin to prove one particular instance of negligence or knowledge of one specific hazard. *Id.*

Brookshire, on the other hand, focuses on *Reece*, asserting the facts of that case are "nearly identical" to the facts in this case. Here, as in *Reece*, a customer slipped in a puddle of water, allegedly from ice that fell from a drink dispenser. *Reece*, 81 S.W.3d at 813. In both cases, the store was not actually aware of the particular ice cube. *Id.* at 814. In both cases, the stores acknowledged an increased risk caused by the drink machines. *Id.* Brookshire emphasizes that, in *Reece*, the court said the increased risk of the likelihood of spills in a self-service beverage area did not relieve the plaintiff from the burden of proving the elements of premises liability. *Id.* at 817.

We agree the factual events of these two cases are similar. However, there are issues before this Court in the instant case that distinguish it from the issues before the Texas Supreme Court in *Reece*. In *Reece*, the issue was whether evidence that a store employee was in close proximity to the dangerous condition right before the fall was legally sufficient to charge the defendant with constructive notice of the dangerous condition. *Id.* at 813. In this

case, Taylor contends the dangerous condition was the placement of the Coke dispenser without adequate matting around it; she makes no contentions regarding the proximity of the store employees to the place where she fell. We believe that, with respect to issues, this case is more analogous to *Corbin* than *Reece* because the issue here is whether liability attaches, not because of a particular substance on the floor or because of the proximity of the store employees to the puddle, but because of an alleged unreasonably dangerous method of display that caused melting ice to become a floor hazard on a regular basis. This is much more like the allegations about the grape display in *Corbin.*

■ We recognize, as did the Texas Supreme Court in *Corbin,* that slip and fall cases usually arise when a customer slips on a food item dropped on the floor; in the typical case, the only dangerous condition alleged is the specific food item on the floor. *Corbin,* 648 S.W.2d at 297. However, in this case, Taylor has alleged the placement of the Coke dispenser was the dangerous condition, not just the particular melted ice on the floor. The deli employee admitted ice fell on the floor from the Coke dispenser on a regular, if not daily, basis, and Brookshire acknowledged ice fell beyond the area where it had placed mats. Therefore, regardless of knowledge of this particular piece of melted ice on the floor, Brookshire knew the danger its Coke dispenser posed to its customers.

■ Brookshire contends that, even if this Court finds the premises defect to be analyzed as Taylor contends and not as the specific water on the floor, Taylor cannot prevail on summary judgment because she produced no evidence that these conditions were "unreasonably dangerous conditions" and produced no evidence that these conditions were the cause in fact of Taylor's fall.

Brookshire asserts that whether something is an unreasonable risk should be a question for the jury. "A condition presenting an unreasonable risk of harm is one in which there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Reliable Consultants, Inc. v. Jaquez,* 25 S.W.3d 336, 341 (Tex.App.-Austin 2000, pet. denied), *quoting Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 754 (Tex.1970). Here, the deli employee said ice fell on the floor on a regular basis. She said they cleaned the water from the floor "[s]o things like this don't happen" and agreed that water on a tile floor poses a danger to the customers if left there. She also admitted ice caused a hazard in the store on a daily basis. Moreover, it was undisputed the matting Brookshire had in place was inadequate. The ice was still falling on the floor on a regular basis. All this evidence offered by Taylor proved the probability of a harmful event occurring in this deli area was such that a reasonably prudent person would have foreseen it or some similar event as likely to happen.

■ Brookshire also asserts that it was possible the ice came from a customer's cup, not the Coke dispenser. Proximate cause consists of cause in fact and foreseeability. *Id.* at 343. A defendant's negligence is a cause in fact of the plaintiff's injuries if the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.* In this case, the store manager said he had no reason to believe Taylor fell on anything other than the ice cube, and the deli employee testified she assumed the water or ice on the floor came from the Coke dispenser in that area.

On appeal, the nonmovant can always attack the legal sufficiency of the evidence offered to prove entitlement to summary judgment, but if the existence of a fact issue is to be the basis of the nonmovant's complaint on appeal, the nonmovant has the burden to present summary judgment proof to establish that fact issue at the trial level. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The movant does not have to negate all possible issues of law and fact that *could* be, but were not, raised by the nonmovant in the trial court. *Id.* at 678–79. The only evidence about ice falling on the floor from any source other than the Coke dispenser was the deli employee's testimony that "little kids are going to spill ice" and where she agreed that even adults are prone to spill ice from time to time. This, however, is no more than a scintilla of evidence the ice that caused Taylor's fall came from such sources. All the other summary judgment evidence, albeit circumstantial, is conclusive that the melting ice which caused Taylor's fall originated with Brookshire's Coke dispenser. Brookshire failed to establish a fact issue on this point.

As its second point of error, Brookshire contends the affidavit of Dewayne Jenkins, the assistant store manager, was sufficient to defeat Taylor's motion for summary judgment. Brookshire contends this affidavit was evidence that Brookshire had in place policies and procedures that, in the exercise of ordinary care, seek to allow the discovery of hazardous conditions on a reasonably prompt basis. Brookshire asserts this evidence contradicts the third element of a premises liability claim: that the owner/operator did not exercise reasonable care to reduce or eliminate the risk. Jenkins' complete affidavit is as follows:

On July 27, 2000, I was employed as Assistant Manager for Defendant Brookshire Grocery Company. I was employed at store # 14 in Paris, Texas. Prior to Mrs. Taylor's fall, store personnel were not aware of any complaint of melted ice on the floor in the deli area or any other hazardous condition near that area. No prior complaints had been made.

Brookshire Grocery Company, and specifically store # 14, has in place policies and procedures that in the exercise of ordinary care seek to allow the discovery of hazardous conditions on a reasonably prompt basis. In this regard, each and every store employee is trained to engage in "constant visual inspection" of the premises during the conduct of their job duties. In addition, regular full inspections of the floors are performed several times each day by a member of the management staff so as to further reduce, in the exercise of reasonable care, the risk of harm presented by hazards that may arise.

This affidavit might be some evidence of care by Brookshire if the only duty it owed its customers was to pick up whatever objects it found on the floor. However, such a limited duty has been specifically rejected by the Texas Supreme Court. *Corbin*, 648 S.W.2d at 296.

Brookshire points out that, in *Corbin*, the Texas Supreme Court specifically noted Safeway's lack of frequent inspections. *Id.* at 297. Brookshire then points to language in the above affidavit stating that Brookshire's employees engaged in "constant visual inspection" of the premises as they conducted their job duties. Brookshire contends this evidence of visual inspection of the floor in an area where ice might be present was some evidence of reasonable care, just as evidence of frequent inspections in the area where grapes might have been on the floor in *Corbin* would have been some evidence of reason-

able care by Safeway. Brookshire also contends that, in the instant case, the mere presence of a mat on the floor created a fact question concerning whether the condition was unreasonably dangerous.

 Factual distinctions between the instant case and *Corbin* weigh heavily against Brookshire's contentions. In *Corbin,* the store manager trainee and the district manager of Safeway testified Safeway's company policy was to keep "large non-skid, non-slip walk-off mats" in front of the grape display. *Id.* at 294. Safeway contended the mat was in place at the time of Corbin's fall, but Corbin said he saw no mat or other floor covering in the area where he fell. *Id.* at 294, 296. Therefore, unlike this case, the only issue concerning floor matting in *Corbin* was whether the matting was in place at the time of the fall, not whether the matting was adequate with respect to the store's chosen display method. In fact, in *Corbin,* there was no evidence the matting used by Safeway had not worked before this particular fall. The uncontroverted evidence in this case showed the matting used by Brookshire was inadequate. Ice was still falling on the floor, creating a hazard to customers in this area on a daily basis. Under these specific circumstances, evidence of visual inspection of the area is no more than a scintilla of evidence of reasonable care, and the mere presence of a mat on the floor did not create a fact question concerning whether the condition was unreasonably dangerous.

 As the Texas Supreme Court stated in *Corbin,* the store owner's liability to its invitee depends on its knowledge of store conditions posing risks to customers and the failure to act reasonably in response to those risks, not on the failure to comply with a company policy. *Corbin,* 648 S.W.2d at 297–98. We agree with Taylor; evidence of routine inspections is

pertinent when the issue deals with the ability of the store owner to find the dangerous condition. Evidence that the owner merely did inspections, when that owner created and already knew of the dangerous condition, is not evidence of ordinary care, but evidence of a complete disregard of its duty.

The record in the instant case contains evidence that ice from the Coke dispenser fell on the floor on a regular, if not daily, basis and that Brookshire employees had to clean the water from the floor "[s]o things like this don't happen." Yet, Brookshire provided no evidence, including Jenkins' affidavit, of why it failed to remedy this condition or warn customers of the danger. Accordingly, Brookshire's second point of error is overruled.

 Brookshire also contends the trial court erred by not granting its no-evidence motion for summary judgment. Based on this error, Brookshire asks this Court to reverse and render judgment in its favor, as opposed to reversing and remanding for trial. Brookshire's motion asserted Taylor could produce no evidence of actual or constructive knowledge by it of a dangerous condition as required by the elements of a premises liability cause of action. We agree Taylor did not produce evidence of knowledge of the particular piece of melting ice on the floor that caused her fall. However, the Texas Supreme Court has recognized that a storekeeper may be liable for any dangerous premises condition about which such storekeeper should be aware, not just for specific objects left on the floor. *Id.* at 298. Taylor alleged the placement of the Coke dispenser without adequate matting was the dangerous condition, not just the particular piece of melting ice on the floor. Moreover, after making such allegation, Taylor produced evidence of Brookshire's knowledge of this dangerous condition:

the testimony of the deli employee that ice from the Coke dispenser fell on the floor on a regular basis. Accordingly, this point of error is overruled.

We affirm the judgment.