NO. 12-02-00379-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


DARYL LYNE HAMBRICK,
§
 APPEAL FROM THE 392ND

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


KIDD JONES OF HENDERSON COUNTY

d/b/a CAR WASH TWO,

APPELLEE
§
 HENDERSON COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant Daryl Lyne Hambrick ("Hambrick") challenges the trial court's grant of summary
judgment in favor of Appellee Car Wash Two General Partnership d/b/a Car Wash Two ("the
Partnership") in this premises liability case. In one issue, Hambrick contends that the trial court
erred in granting summary judgment because the summary judgment evidence creates a genuine
issue of material fact on all of the elements of his negligence cause of action. We affirm.


Background

 On December 17, 2000, Hambrick accompanied his uncle, Ronnie Hambrick, to the Car
Wash Two in Athens, Texas, which was owned and operated by the Partnership. Upon arriving at
the car wash, Hambrick's uncle pulled into one of the car wash bays and began washing his truck
with the spray equipment while Hambrick stood to the side and watched. After his uncle finished
washing the truck, Hambrick followed on foot while his uncle pulled forward out of the bay and
drove down a paved slope to one of the vacuum stations. During Hambrick's walk down the paved
slope to the vacuum station, he slipped on some "black ice" and fell on his right hip. The impact
fractured Hambrick's right hip, which necessitated a complete hip replacement. 

 On March 28, 2002, Hambrick filed suit against the Partnership, alleging that his injuries
were proximately caused by the Partnership's negligence in 


 1) failing to inspect the paved portion of their premises around their car wash bays for ice or
water accumulation in such severely cold weather conditions as existed on or before the time
of the subject occurrence;


 2) failing to warn invitees, including Plaintiff, of the fact that the subject paved surface of their
premises had patches of ice that could cause a person to fall;


 3) failing to remove the ice in question or place chemicals or other compounds on said ice to
either melt or give traction over same; and


 4) failing to have an attendant on duty to assist and/or warn patrons such as Plaintiff of the
dangerous conditions existing on said premises.



 The Partnership filed its Original Answer on April 10 and, after substantial discovery, filed
both traditional and no-evidence motions for summary judgment on October 16. (1) See Tex. R. Civ.
P. 166a(b), (i). Hambrick filed his response to the Partnership's motion for summary judgment on
November 15, and on November 21, the trial court heard argument on the motion. That same day,
the trial court granted the Partnership's motion for summary judgment. 

 In one issue, Appellant contends that the trial court erred in granting summary judgment in
favor of the Partnership because a genuine issue of material fact exists which precludes summary
judgment.


Standard of Review

 This appeal involves the review of a traditional motion for summary judgment and a no-evidence motion for summary judgment. We apply the well-recognized standard of review for
traditional summary judgments by considering the summary judgment evidence in the light most
favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and
determining whether the movant proved that there were no genuine issues of material fact and that
it was entitled to judgment as a matter of law. See Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678-79 (Tex. 1979). In order for a defendant to be entitled to summary judgment, it must either
disprove an element of each cause of action or establish an affirmative defense as a matter of law.
American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997).

 The trial court must grant a no-evidence motion for summary judgment unless the non-movant produces evidence that raises a genuine issue of material fact on the challenged element of
his claim or defense. Tex. R. Civ. P. 166a(i). The appellate court reviews evidence presented in
response to a motion for a no-evidence summary judgment in the same way it reviews evidence
presented in support of, or in response to, a motion for traditional summary judgment; it accepts as
true all evidence favorable to the non-movant, indulges every reasonable inference, and resolves all
doubts in favor of the non-movant. Hight v. Dublin Veterinary Clinic, 22 S.W.3d 614, 619 (Tex.
App.- Eastland 2000, pet. denied). Granting a no-evidence motion for summary judgment is
improper if the non-movant presents more than a scintilla of probative evidence to raise a genuine
issue of material fact on the challenged element. Id. More than a scintilla of evidence exists when
the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions." Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).


Was the Partnership Entitled to Judgment as a Matter of Law?

The Law of Premises Liability

 An invitee enters onto another's land with the owner's knowledge and for the mutual benefit
of both parties. Rosas v. Buddie's Food Store, 518 S.W.2d 534, 536 (Tex. 1975). A premises
owner owes an invitee a duty to exercise reasonable care to protect that person from dangerous
conditions on the premises if the conditions were known or discoverable to the owner. See Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). When an owner has actual or
constructive knowledge of any condition on the premises that poses an unreasonable risk of harm
to an invitee, that owner has a duty to take whatever action is reasonably prudent under the
circumstances to reduce or eliminate the unreasonable risk. Corbin v. Safeway Stores, Inc., 648
S.W.2d 292, 295 (Tex. 1983).

 This duty toward the invitee, however, does not make the owner an insurer of the invitee's
safety. Gonzalez, 968 S.W.2d at 936. In order for Hambrick to prevail on his premises liability
claim, he had to prove that 1) the Partnership had actual or constructive notice of some condition on
the premises, 2) the condition posed an unreasonable risk of harm, 3) the Partnership did not exercise
reasonable care to reduce or eliminate the risk, and 4) the Partnership's failure to use such care
proximately caused his injuries. (2) Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). The
notice element in such a claim is satisfied by establishing that 1) the defendant placed the substance
on the premises, 2) the defendant actually knew that the substance was on the premises, or 3) it is
more likely than not that the condition existed long enough to give the premises owner a reasonable
opportunity to discover it. See Gonzalez, 968 S.W.2d at 936. When circumstantial evidence is
relied upon to prove constructive notice, the evidence must establish that it is more likely than not
that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to
discover the condition. Id.

 In the instant case, Hambrick does not contend that the Partnership placed the ice on the
pavement or that the Partnership actually knew that "black ice" was on the pavement. The central
issue in this case focuses on the third possible way notice can be imputed to a premises owner; that
is, whether it was more likely than not that the condition (the "black ice") existed long enough to
give the Partnership a reasonable opportunity to discover it. This so-called "time-notice rule" is
based on the premise that temporal evidence best indicates whether the owner had a reasonable
opportunity to discover and remedy a dangerous condition. See Wal-Mart Stores, Inc. v. Reece, 81
S.W.3d 812, 816 (Tex. 2002). What constitutes a reasonable time for a premises owner to discover
a dangerous condition will, of course, vary depending upon the facts and circumstances presented. 
Id. But in any case, there must be some proof of how long the hazard was there before liability can
be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous
condition. Id. Otherwise, owners would face strict liability for any dangerous condition on their
premises, an approach the Texas Supreme Court has clearly denounced. Id. (citing CMH Homes,
Inc. v. Daenen, 15 S.W.3d 97, 102 (Tex. 2000)). 

The Summary Judgment Proof

 The evidence attached to Hambrick's response to the Partnership's motion for summary
judgment consisted of 1) his own deposition, 2) the deposition of his uncle, Ronnie Hambrick, 3)
the depositions of Jerry Horn ("Horn") and Larry Hankins ("Hankins"), the two EMS personnel who
arrived at the scene of the accident, 4) the deposition of Joe Van Cleave ("Van Cleave"), one of the
owners of the car wash and its sole operator, and 5) an affidavit prepared by Eric Sorensen
("Sorensen"), a meteorologist for KLTV Channel 7 in Tyler. (3) 

 At his deposition, Hambrick testified that he did not remember what the weather was like and
that although he was not paying attention, he never noticed anything on the ground where he was
walking. He further testified that he never looked on the ground to see what he slipped on, but later
found out from one of the paramedics that he had slipped on "black ice." 

 Ronnie Hambrick stated at his deposition that on the morning of December 17, the weather
was clear and that it had "warmed up"; therefore, he thought it would be a good day to wash his
truck. Ronnie also testified that when he drove into the car wash, he did not see any ice on the
ground. After Hambrick slipped, Ronnie went to help him. When he arrived at the place where
Hambrick fell, he "started sliding, so there had to be ice there." Ronnie further stated that the "spot"
Hambrick slipped on "looked just like clear water, but it was just slick."

 At Horn's deposition, he testified that "black ice" is "ice you can't see" and that he almost
slipped on the patch of "black ice" when he exited the ambulance. Although Horn could not see the
ice there or in any other area of the car wash, he called back to Hankins to warn him about the
slippery spot. After Horn carefully walked over the slippery spot, he stated that he had no difficulty
walking anywhere else on the car wash premises. Hankins testified that he remembered a "slippery
surface," but could not say for certain that the slippery substance was ice. Hankins also stated that
he could not determine how long the area had been slippery and that when he was driving to the car
wash to pick up Hambrick, he had no difficulty driving on the road.

 Van Cleave testified that he had no knowledge of the weather conditions on the morning of
Hambrick's accident. He stated that his usual routine is to visually inspect the car wash premises
between 5:45 and 6:00 a.m. every morning because the car wash is open 24 hours, seven days a
week. Van Cleave stated that he makes no more than five and not less than three trips a day to the
car wash. During his daily inspections, Van Cleave testified that he looks for things that need to be
done around the car wash, including checking to see whether the trash cans need to be emptied, and
also checks the condition of the hoses, the computer system, and the levels of the various liquids
dispensed at the car wash. He stated that he inspects the car wash one final time before he goes
home late in the afternoon. Van Cleave assumed he performed his usual routine on the date of the
accident, but could not remember specifically whether he did so. Van Cleave also stated that he had
never had a problem with ice and did not use any compounds for melting ice. When asked the
hypothetical question of what he would have done if he had seen ice in the area where Hambrick fell,
Van Cleave testified that


 [o]ur policy on ice is - if we see ice is I won't put anything down. If I add any dirt or any chemicals
to it, it will make a muddy-like pit. And it's just like a road. People won't come into my car wash if
they see mud on the car wash. . . . So we don't put anything, and I haven't had that problem, so I really
don't - haven't faced that yet.


 Q: When you say you have an ice policy, is that -


 A: It's not an ice policy. You said it was a hypothetical, and if I came across it that's what we'd do. 
I wouldn't do anything to it.


 Q: Well, you mentioned a word 'our ice policy.'


 A: Well, it's just - there's no policy because I've never seen ice. You know, we just don't get it that
much.


 Q: So if I'm understanding you correctly, you wouldn't have done anything?


 A: I would have left it alone. 



 In Sorensen's affidavit, he stated that December of 2000 was the fifth coldest December on
record and that a "generalized ice storm" began on December 13 and hit hardest in an area roughly
bounded by Interstate 30 to the north, the Texas/Louisiana state line to the east, U.S. Highway 79
to the south, and U.S. Highway 175 to the west. Sorensen further stated that the precipitation was
initially in the form of rain, "then freezing rain and sleet due to abnormally cold, sub-freezing
temperatures at the surface." Although temperatures rose above freezing during the days after the
event, Sorensen noted that "much of the ice took the better part of a week to melt."

 The affidavit also included the following chart that mapped the date, high and low
temperatures, and amount of precipitation from December 13 through December 17:




December 13

High temp: 38
Low temp: 30
Precip: 1.03"
December 14
High temp: 49
Low temp: 28
Precip: 0.00"
December 15
High temp: 48
Low temp: 34
Precip: 0.20"
December 16
High temp: 54
Low temp: 29
Precip: 0.00"
December 17
High temp: 44
Low temp: 22
Precip: 0.00"


 Sorensen also remarked that on December 16 and 17, the temperature would not have risen
above freezing (32 degrees Fahrenheit) until sometime after 12:00 noon and that the temperature
"would have been below freezing during the morning hours up until and including noon and shortly
thereafter."

 Hambrick argues that the Partnership's operation of the car wash potentially creates an icy,
unreasonably dangerous condition when water is dispensed by its patrons during extreme winter
conditions. Hambrick further contends that his summary judgment proof, when viewed in total,
establishes that the Partnership had actual or constructive knowledge of the icy condition on its
premises.

Analysis

 According to Hambrick's amended original petition, his fall was "proximately caused by a
dangerous condition existing on a paved portion of Defendant's premises located near the car wash
bays" that the Partnership knew or should have known existed. Specifically, Hambrick alleges that
"he was caused to slip and lose his footing on a clear patch of ice which had formed on the pavement
due to extremely cold temperatures from the preceding night." Consequently, the dangerous
condition that Hambrick alleges existed is the "clear patch of ice," or "black ice." 

 We first note that the record is devoid of any evidence that the Partnership either placed the
"black ice" on the pavement where Hambrick fell or actually knew that "black ice" was present on
the pavement. Hambrick's claim relies solely on circumstantial evidence; therefore, his summary
judgment proof must establish that it is more likely than not that the "black ice" existed long enough
to give the Partnership a reasonable opportunity to discover the condition. See Gonzalez, 968
S.W.2d at 936. 

 After a thorough review of Hambrick's summary judgment proof, we disagree with
Hambrick's contention that it is more likely than not that the patch of "black ice" existed long
enough to give the Partnership a reasonable opportunity to discover it. The only deponent who
admitted seeing any substance on the pavement was Ronnie Hambrick, and he testified that the patch
of "black ice" "looked just like clear water, but it was just slick." No other witness testified that he
saw any ice anywhere on the car wash premises on the day of the accident. Van Cleave, the premises
owner, testified that he had never had a problem with ice before and that he did not have any
knowledge of the weather conditions on the morning of December 17. 

 The only proof that Hambrick offers to satisfy the "time-notice" rule is Sorensen's affidavit.
The assertions Sorensen makes in the affidavit show that 1.03 inches and .20 inches of precipitation
fell at Tyler Pounds Field on December 13 and December 15, respectively, and that this precipitation
froze and thawed during those three days. There is no evidence in the affidavit, nor in any other part
of the summary judgment proof, that demonstrates that it was more likely than not that "black ice,"
or any other ice, had been present on the premises of the car wash for a sufficient period of time to
give the Partnership a reasonable opportunity to discover the ice. Although the summary judgment
proof, in total, may create the inference that "black ice" had formed at the car wash on December
13 and lasted until December 16 and 17 (the time that Hambrick has alleged that the ice formed),
such an inference is not the only one that can be made from the summary judgment proof. The fact
that it may have been freezing on the morning of the accident also supports the opposite inference,
that the "clear patch of ice" had formed while Ronnie Hambrick washed his vehicle or possibly 
when another patron washed his vehicle that morning prior to the Hambricks's arrival. Hambrick's
circumstantial evidence creates equally plausible but opposite inferences and does not prove that it
was more likely than not that the ice had been present for a sufficient period of time in order to give
the Partnership a reasonable time to discover the condition. Such proof is merely speculative and
is of no evidentiary value. See Gonzalez, 968 S.W.2d at 937-38 (plaintiff only proved that macaroni
salad could possibly have been on the floor long enough to make Wal-Mart responsible for noticing
it; plaintiff did not prove that it was more likely than not that macaroni salad had been on the floor
for a long time); see also Reece, 81 S.W.3d 812, 816-17 (no evidence to support constructive notice
because the plaintiff had no evidence that the spill was conspicuous, no evidence indicating when
or how the spill came to be on the floor, and no evidence of the condition of the liquid to show how
long it had been there); Brookshire Grocery Co. v. Taylor, 102 S.W.3d 816, 822 (Tex. App.-
Texarkana 2003, pet. filed) (plaintiff slipped and fell on ice dispensed by a soft-drink machine and
alleged that the placement of the machine created a dangerous condition; evidence that employee
admitted that ice fell on floor from machine on a daily basis and that Brookshire's knew that ice fell
beyond area where mats were placed showed that Brookshire's knew the danger the machine posed
to its customers). 

 Considering all of the summary judgment proof in the light most favorable to Hambrick, we
hold that there is no evidence to support the conclusion that the Partnership had constructive notice
of the "black ice." See Reece, 81 S.W.3d at 817. Although this rule is harsh and demanding on
plaintiffs, it is nevertheless well established that plaintiffs must always fulfill the burden of proving
that the dangerous condition was either known to the defendant or had existed for such a length of
time that he should have known about it. See Gonzalez, 968 S.W.2d at 938 (citing Henderson v.
Pipkin Grocery Co., 268 S.W.2d 703, 705 (Tex. Civ. App.-El Paso 1954, writ dism'd w.o.j.)).

 In one sub-issue, Hambrick contends that certain "unusual facts and circumstances" in this
case eliminate his need to prove actual or constructive notice and absolve him of adducing sufficient
evidence to comply with the "time-notice" rule. Hambrick argues that Van Cleave's assertion that
he "would have left it alone" and "wouldn't [have done] anything" even if he knew ice was present
on the car wash premises renders the notice requirement immaterial because he would have ignored
the problem even if he had notice that the ice was present. The argument for an exception to the
"time-notice" rule was rejected by the supreme court in CMH Homes, Inc., where it disapproved
of the court of appeals' refusal to apply the rule simply because it might be impossible for the
plaintiff to show actual or constructive knowledge. See CMH Homes, Inc., 15 S.W.3d at 102-03.
We are duty bound to follow the holdings and authoritative pronouncements of the Texas Supreme
Court; therefore, we decline to acknowledge any exceptions to the "time-notice" rule. See Robert
J. Patterson, P.C. v. Leal, 942 S.W.2d 692, 695 (Tex. App.- Corpus Christi 1997, writ denied). 

 

Conclusion

 In his brief, Hambrick admits that "there is no evidence that can establish the precise time
that the ice formed." Although he was not required to prove the precise time that the ice formed, he
had the burden to prove that it was more likely than not that the ice had been present on the car wash
premises for a sufficient period of time in order to give the Partnership a reasonable opportunity to
discover it. Because Hambrick failed to meet this burden, the trial court did not err when it granted
the Partnership's motion for summary judgment. Accordingly, we affirm the trial court's judgment.



 SAM GRIFFITH 

 Justice



Opinion delivered July 16, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.








(PUBLISH)
1. The Partnership's motions for summary judgment were contained in one pleading; therefore, we will refer
to these motions as one "motion" for the sake of simplicity.
2. It is undisputed that the Partnership owed Hambrick the same duty it would owe an invitee even though
he was merely accompanying his uncle to the car wash. See Wal-Mart Stores, Inc. v. Lerma, 749 S.W.2d 572, 575
(Tex. App.-Corpus Christi 1988, no writ).
3. In its brief, the Partnership contends that Sorensen's affidavit is inappropriate summary judgment
evidence because 1) it is not based on personal knowledge, 2) it does not contain the exhibits that the alleged facts
and opinions are based on, 3) the affiant is not competent to testify about the condition of the premises in question on
December 17, 2000, 4) it does not provide any evidence that would assist a trier of fact because it is too generalized,
and 5) it presents no evidence of the length of time that the "black ice" was present at the car wash. These objections
were raised in the Partnership's motion for summary judgment; however, it never obtained a ruling on the affidavit
from the trial court. As a prerequisite to presenting a complaint for appellate review, the record must show that (1)
the complaint was made to the trial court by a timely request, objection, or motion and (2) the trial court either
expressly or implicitly ruled on the motion or refused to rule on the matter. See Tex. R. App. P. 33.1. A ruling on a
motion for summary judgment does not imply that the trial court implicitly ruled on evidentiary objections. Rogers
v. Continental Airlines, Inc., 41 S.W.3d 196, 200 (Tex. App.-Houston [14th Dist.] 2001, no pet.). Therefore, the
Partnership has waived any objection to Sorensen's affidavit by not obtaining a ruling on its objections. Id.; see also
Well Solutions, Inc. v. Stafford, 32 S.W.3d 313, 316-17 (Tex. App.-San Antonio 2000, no pet.).