# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-04-00679-CV

---

**Lisa Sova, Appellant**

**v.**

**Bill Miller Bar-B-Q Enterprises, Ltd., Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. GN301623, HONORABLE PAUL DAVIS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Lisa Sova appeals the summary judgment entered in favor of appellee Bill Miller Bar-B-Q on the slip-and-fall claim that she brought against the restaurant. The sole issue on appeal asks whether a genuine issue of material fact remains about whether Bill Miller had actual or constructive knowledge of an unreasonably dangerous condition on its premises. Because the record demonstrates no genuine issue of material fact, we will affirm.

### BACKGROUND

On November 1, 2001, Lisa Sova went to lunch with a co-worker at an Austin location of Bill Miller Bar-B-Q. According to the accident report filled out by Sova later that day, and as confirmed in Sova's subsequent deposition, Sova "put down [her] food tray and purse at the table with [her] friend" and "went to the condiment bar to get a small container of pico de gallo.

When leaving the condiment bar [she] slipped on the water, pico de gallo flew everywhere, and [she] hit the floor!"

In the accident report, Sova described the cause of her accident as "[a] small puddle of water [that] was on the tile floor next to the condiment bar." Sova testified that, when she approached the condiment bar, she did not see anything on the floor, but she saw the puddle after she fell. Although Sova testified that she did not know how long the puddle had been on the floor nor how it had gotten there, she was confident that the puddle was water because "[i]t was clear." Also, Sova believed the puddle was created by a piece of ice that had fallen from the condiment bar and melted, given the size of the puddle (about the same diameter as "the top of [a] cup"), its proximity to the condiment bar, its clear appearance, and the fact that the spot on her jeans that got wet in the fall felt cool to the touch. Based on these observations about the puddle, Sova alleged in her live pleading that "[t]he foreign substance on the floor next to the condiment bar created an unreasonable risk of harm . . . [of] which Defendant knew or should have known."

As an alternative theory for her premises liability claim, Sova also pled that the "condiment bar and surrounding floor . . . was a condition on the premises that posed an unreasonable risk of harm . . . [of] which Defendant knew or should have known." This argument was based on the condiment bar being a "high traffic area . . . where condiment items, water, ice, and soft drinks often fell to the floor creating an unreasonably dangerous slippery condition on the . . . cory [sic] stone tile floor surrounding the condiment bar." Sova alleged that Bill Miller was aware of this danger, yet "failed to make the condition reasonably safe by utilizing floor mats or other viable means to reduce the risk."

2

Sova claimed that, as a result of the fall, she bruised her left hip, suffered a contusion to her left elbow, and dislocated her left shoulder, for which she underwent arthroscopic surgery. Sova sought approximately $20,000 in medical expenses and lost wages, plus damages for past and future pain, mental anguish, disfigurement, and physical impairment.

Bill Miller filed a no evidence motion for summary judgment[1] asserting that Sova could not establish that Bill Miller had actual or constructive knowledge of the dangerous condition. On September 27, 2004, the trial court granted Bill Miller's summary judgment, ordering that Sova take nothing on her claims and that she reimburse Bill Miller for its incurred costs pursuant to Texas Rule of Civil Procedure 131. No grounds were provided for the judgment. Sova now appeals the trial court's granting of summary judgment.

## ANALYSIS

**Standard of review**

A no evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial; and (2) the nonmovant fails to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). In a case where the trial

---

[1] Although Sova does not contest Bill Miller's statement that its motion presented both traditional and no evidence grounds, a thorough review of its motion shows that Bill Miller sought summary judgment pursuant only to rule 166a(i) for no evidence. *See* Tex. R. Civ. P. 166a(i). Thus, our analysis of whether a genuine issue of material fact remains will be limited to the standard of review applicable to no evidence motions.

court's judgment does not specify the grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 692 (Tex. App.—Austin 2005, pet. denied).

In reviewing a no evidence summary judgment, we "must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion" to determine whether more than a scintilla of evidence was presented on the challenged elements of the nonmovant's claim. *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 604 (Tex. App.—Austin 2004, no pet.). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc*., 650 S.W.2d 61, 63 (Tex. 1983)). Because the propriety of granting a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc*., 875 S.W.2d 695, 699 (Tex. 1994).

**Premises liability**

Bill Miller owed Sova, its invitee, a duty to exercise reasonable care to protect her from unreasonably dangerous conditions on the restaurant premises that were known or reasonably discoverable to Bill Miller. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *Wal-Mart Stores, Inc. v. Gonzales*, 968 S.W.2d 934, 936 (Tex. 1998). This duty, however, neither obligated Bill Miller to ensure Sova's safety nor made Bill Miller strictly liable for her injuries.

4

*Reece*, 81 S.W.3d at 814-15.  To prevail on a premises liability claim, a plaintiff must establish that the premises owner/operator had actual or constructive knowledge of some condition on the premises that posed an unreasonable risk of harm, yet failed to exercise reasonable care to reduce or eliminate the risk, which proximately caused the plaintiff's injuries.  *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Corbin v. Safeway Stores, Inc*., 648 S.W.2d 292, 296 (Tex. 1983).

In a slip-and-fall case, the knowledge element may be satisfied with proof that the defendant (1) created the condition, (2) actually knew of the condition, or (3) should have known of the condition because it existed for long enough to provide the defendant a reasonable opportunity to discover it.  *Reece*, 81 S.W.3d at 814, 816.  In determining whether the premises owner/operator had constructive knowledge under the third method of proof, known as the "time-notice rule," relevant factors to consider include the proximity of employees to the condition, the conspicuousness of the condition, and the length of time that the condition existed.  *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567-68 (Tex. 2006); *Reece*, 81 S.W.3d at 816.  "When circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is *more likely than not* that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition."  *Gonzales*, 968 S.W.2d at 935 (emphasis added) (evidence showing only "possibility" that condition existed long enough to put store on notice was insufficient).

The only issue here is whether Sova put forth more than a scintilla of evidence to create a genuine issue of material fact about whether Bill Miller had actual or constructive knowledge of an unreasonably dangerous condition on its premises.  Sova and Bill Miller, however, present different interpretations about what constituted the dangerous condition in this case:  Sova

5

argues that the condiment bar and surrounding floor generally posed an unreasonable risk about which Bill Miller had actual or constructive knowledge, yet failed to alleviate. Bill Miller narrows the issue to whether it knew or should have known about the particular puddle on the floor. We consider both theories to determine whether Sova demonstrated that a genuine issue of material fact remained.[2]

**Puddle on floor as unreasonably dangerous condition**

Although Sova believed that the puddle was created by a piece of ice that had fallen and melted, she admitted that she did not know where the puddle came from. The only credible evidence about the puddle is that, after Sova fell, she saw a small puddle of clear liquid on the floor near the condiment bar, and the wet spot on her jeans felt cool to the touch. This evidence no more demonstrates that the puddle resulted from fallen, melted ice than from a spilled drink of lemon-lime soda or water. Even if it were ice, it could have fallen from a customer's drink just as easily as from the condiment bar. Furthermore, Sova also admitted that she did not know how long the condition had existed. She testified that she did not see the puddle as she approached. Thus, it is just as likely that the puddle was created while Sova was standing at the condiment bar (leaving Bill Miller

_____

[2] Although Bill Miller's summary judgment motion focused on whether there was evidence that it had knowledge of the puddle on the floor, the essence of its motion challenged whether Sova had any evidence of the first element of her premises liability claim—that Bill Miller had actual or constructive knowledge of a dangerous condition on its premises. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (setting forth required elements). Considering this, along with the facts that the trial court did not articulate a ground for its judgment and Sova specifically asks this Court to determine whether a genuine issue of material fact remains about Bill Miller's awareness of the danger posed by the condiment bar area, our review of whether Bill Miller had actual or constructive knowledge of a dangerous condition encompasses both theories of what constituted the condition—the specific puddle and the general condiment bar area.

virtually no time to discover and remedy the condition) as it was that the substance had been on the floor for some time.

Where testimony "could give rise to any number of inferences, none more probable than another," as here, then the evidence does not rise to "more than a scintilla to withstand a no-evidence challenge." *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995). Sova's subjective beliefs about the puddle's origin and its temporal longevity were not supported by any other evidence and, thus, amount to nothing more than conjecture and speculation insufficient to negate a no evidence summary judgment motion. *See Gonzales*, 968 S.W.2d at 937-38; *see also* Tex. R. Evid. 602 (personal knowledge required for witness testimony). Although Sova's testimony may raise a genuine issue about whether she slipped on a puddle of water, it does nothing to prove how the puddle got there, how long it had been there, or whether Bill Miller knew or should have known about its existence at the time of Sova's fall. Just as in *Reece*, the record in this case demonstrates

> no evidence to indicate how long the spill existed before she fell. There was no evidence that the spill was conspicuous—it was not large and consisted of a clear liquid on a light tile floor. There was no evidence that [a store employee] saw the spill before [appellant] fell. . . . There was no evidence indicating when or how the spill came to be on the floor. Nor was there evidence concerning the condition of the spilled liquid that might indicate how long it had been there.

81 S.W.3d at 816-17; *see also Wright v. Wal-Mart Stores, Inc.*, 73 S.W.3d 552, 556 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Therefore, considering the evidence in the light most favorable to Sova, we hold that there is no evidence to support the conclusion that Bill Miller had actual or constructive knowledge of the puddle on the floor as a dangerous condition. *See id.*

7

**Condiment bar area as unreasonably dangerous condition**

In *Corbin v. Safeway Stores*, the supreme court recognized that, although "in the typical case, the only dangerous condition that is alleged is the specific [] item on the floor," in some cases the dangerous condition may be based on an allegation "that the store owner maintained an unreasonably dangerous method of display that frequently caused such [] items to become floor hazards." 648 S.W.2d at 297. Noting that "a storekeeper may be held liable for any dangerous premises condition about which he should be aware, not just for specific objects left on the floor," the *Corbin* court reversed the directed verdict[3] because there was more than a scintilla of evidence demonstrating Safeway's actual or constructive knowledge that the way it maintained its self-service grape display was unreasonably dangerous, "even in the absence of evidence showing the store owner's actual or constructive knowledge of the presence on the floor of the specific object causing the fall." *Id*. at 295, 298. The probative evidence in *Corbin* was that Safeway employees acknowledged the store's awareness of the risks posed by the grape display bin: "[Safeway] knew from its experience that the grape bin was an unusually hazardous and continual source of slippery material on which customers may fall." *Id*. at 295; *see also H. E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218, 219 (Tex. 1999) (discussing *Corbin*).

Since *Corbin*, the Dallas, Texarkana, and Houston courts of appeals have issued opinions with similar analyses. In *Crosby v. Minyard Food Stores, Inc*., the plaintiff tripped and fell

---

[3] The analysis in *Corbin*, albeit a directed verdict, is fully applicable to this case because "[a] no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

on a buckled floor mat at the entrance of the store. 122 S.W.3d 899, 900 (Tex. App.—Dallas 2003, no pet.). The court affirmed the trial court's denial of a directed verdict because "Crosby presented evidence that Minyard was aware of the fact that the mat . . . was often buckled and caused customers to fall," including an employee's testimony that "he had to straighten the mat between 48 and 86 times during an eight hour shift" and accident reports "showing that several people had tripped and fallen on the mat within a few weeks before Crosby's accident." *Id*. at 901.

In *Brookshire Grocery Co. v. Taylor*, the plaintiff slipped and fell on a wet substance in the deli, which she alleged was a piece of ice that had fallen from a Coke dispenser. 102 S.W.3d 816, 819-20 (Tex. App.—Texarkana 2003, pet. filed). Taylor claimed that the manner in which Brookshire maintained its drink-fountain area constituted a dangerous condition, whereas "from Brookshire's point of view, the puddle was the dangerous condition." *Id*. at 820. The court affirmed the summary judgment, holding that Taylor established that Brookshire was aware that its Coke dispenser constituted a dangerous condition based on an employee's testimony that ice frequently fell from the dispenser onto the floor and the store's admission that such previously fallen ice had landed on the hard floor, beyond the mats it had in place. *Id*. at 822, 824-25.

In *National Convenience Stores, Inc. v. Erevia*, the plaintiff slipped and fell on a puddle of ice and/or water. 73 S.W.3d 518, 521 & n.1 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). The court upheld the jury's verdict on the premises liability claim because, based on "the manager's testimony that ice falling from iced barrels was a common problem associated with the nature of the display" and "the company policy requiring [absorbent] mats under such displays," which the company had failed to use, there was sufficient evidence that the premises owner had

actual or constructive knowledge that its use of self-serve iced-drink barrels constituted a dangerous condition. *Id.* at 523 & n.2.

Thus, while courts following *Corbin* have recognized that a general area or method of display may constitute an unreasonably dangerous condition, in each of these cases the defendants or one of their employees admitted to knowing about the hazards associated with the manner in which an area was maintained or goods were displayed. *See Corbin*, 648 S.W.2d at 295; *Crosby*, 122 S.W.3d at 901; *Taylor*, 102 S.W.3d at 822, 824-25; *Erevia*, 73 S.W.3d at 523.[4] Additionally, in *Crosby* there were accident reports showing that similar incidents had recently occurred, and in *Erevia* the company's policy manual demonstrated the known risk associated with the display and the need for floor mats to remedy it. *Crosby*, 122 S.W.3d at 901; *Erevia*, 73 S.W.3d at 523. Unlike the affirmative testimony or documentary evidence produced by the plaintiffs in these cases, Sova failed to put forth a scintilla of evidence to demonstrate that Bill Miller knew or should have known that the condiment bar area generally posed an unreasonably dangerous condition.

The record reflects that the basic arrangement of the condiment bar is undisputed: pickles, onions, pico de gallo, butter, lemons or limes, sour cream, bacon, and cheese are all displayed in the condiment bar, housed in an "ice bath." During the lunch hour, which is when Sova fell, the condiment bar's location is a "high traffic area." The floor surrounding the condiment bar is made of hard, relatively smooth, quarry tile. Bill Miller does not have a company policy of using

---

[4] We also take note of a federal case from Mississippi recognizing this "unreasonably safe area" theory of premises liability. *Merritt v Wal-Mart Stores*, 911 F. Supp. 242, 244-45 (S.D. Miss. 1995). In *Meritt*, the court reversed the summary judgment, which had been granted in Wal-Mart's favor pertaining to this theory, on the basis that the plaintiff's expert's deposition testimony created a fact question about the unreasonably dangerous nature of the condition. *Id*. at 247.

floor mats or warning signs in the condiment bar area, and neither of these was present at the time of Sova's fall.

The parties' primary point of disagreement about the condiment bar concerns the "ice bath." Sova alleged that ice can easily spill over or leak out of the condiment bar onto the floor. To the contrary, Bill Miller's manager of five years, Alan Scarborough, testified that the ice is kept under a cover, not exposed on the surface of the condiment bar, and therefore could not fall from the bar to the floor except when new ice is being filled into the bin. He further testified that ice is never added to the condiment bar during the hours of operation; it is only filled once a day, in the morning. Also, Bill Miller's director of personnel, Stacy Huser, who had worked for the company for twenty-three years, described the ice bin as a "long, narrow tub that fits . . . inside" the condiment bar. She explained that, as the ice melts throughout the day, the water accumulates inside the bin, and after the store closes, the rubber stopper inside the bin is unplugged, and the water drains into a five-gallon bucket, which is then emptied. Scarborough acknowledged that, if the drainage bucket was not emptied, water could overflow from the condiment bar, but he testified that this had only happened twice in a five-year period.

Huser and Scarborough both testified that, although spills could occur near the condiment bar, floor mats should not be placed in that area because they would pose a larger "tripping hazard" than they would prevent slips, especially in light of the fact that Bill Miller has alternative policies in place to keep the area safe. The company policies they testified about included designating four employees—the busser, cashier, drink-filler, and manager—to be responsible for patrolling the area throughout the day and, "if there's anything there, to get it up." Scarborough testified that he and his employees "constantly" monitor the area and clean up any spills. The

11

employee manual reflects this general patrolling policy and also directs the cashier "to spot sweep around the condiment bar at 12:30 to keep the floor clean." Thus, Huser and Scarborough concluded that, because there was such a low risk of slip-and-falls near the condiment bar—due to the enclosed ice bin and drainage system, as well as the policies used to keep the area clean—it was not worth incurring the greater hazard of trip-and-falls that would be created by the use of floor mats in the area.

Huser also testified that, as the director of personnel, she oversees all claims against the company, including all accident reports filed by patrons, and that in her twenty-three years of employment with Bill Miller, she was not aware of any other slip-and-fall claims arising from this location. Scarborough confirmed that, in his five years as the manager of the Bill Miller location where Sova fell, there had not been any other slip-and-falls.

In an attempt to contradict Huser and Scarborough's testimony, Sova offered the testimony of Ken Henderson, who was Bill Miller's assistant manager at the time of Sova's fall but had subsequently been terminated. Henderson averred that the floor in front of the condiment bar was "generally slippery." He claimed to have recommended to upper management that the "tile floors [be replaced] with a different surface that would be more resistant to being slippery," but Scarborough denied that any such conversation occurred. Henderson further testified that the condiment bar's ice bin was replenished and its drainage bucket was emptied during the hours of operation (rather than being filled before opening and drained after close) and that "[a]s a result, ice is sometimes spilled on the floor." Finally, Henderson testified that "[o]n occasion, I had customers complain about the general slippery condition of the restaurant's floors." Nonetheless, Henderson

12

also confirmed that there had not been "any other slip-and-fall accidents by customers" during his employment with Bill Miller.

Even taking Henderson's testimony as true, there is no genuine issue of material fact about whether the condiment bar constituted an unreasonably dangerous condition about which Bill Miller knew or should have known. Assuming that the floor surrounding the condiment bar was "generally slippery," or that ice occasionally fell from the condiment bar to the floor, as Henderson averred, this is not evidence of an unreasonably dangerous condition that existed on the day or at the time that Sova fell. No one disputes that the floor in that area could be slippery or that spills could occur—but this does not make the area *unreasonably* dangerous, especially in light of the facts that the area was constantly monitored for spills and that the ice bin and drainage system were enclosed, lowering the possibility of fallen ice or leaked water.

Finally, when relying on a theory that there was an unreasonably dangerous condition, a plaintiff must produce evidence that would demonstrate some reason why the premises owner knew or should have known that the area was unreasonably dangerous. Here, Henderson's testimony at most provides evidence of an occasional danger associated with the condiment bar, but it does not tend to show that the area, generally speaking, was unreasonably dangerous. And, unlike the plaintiffs in *Corbin*, *Crosby*, *Taylor*, and *Erevia*, Sova failed to put forth any affirmative evidence to demonstrate that Bill Miller was aware of an unreasonable danger. *See Corbin*, 648 S.W.2d at 295; *Crosby*, 122 S.W.3d at 901; *Taylor*, 102 S.W.3d at 822, 824-25; *Erevia*, 73 S.W.3d at 523. While a plaintiff is not barred from recovery simply because she was the first person to slip and fall in an area, it is relevant that Sova was unable to produce any evidence of any prior slip-and-falls at the restaurant. Considering that there had been no prior slip-and-falls, it would be difficult to

presume that Bill Miller should have regarded the area as unreasonably dangerous. Thus, we hold that Sova failed to put forth a scintilla of evidence to raise a genuine issue of material fact about whether Bill Miller had actual or constructive knowledge that its condiment bar area constituted an unreasonably dangerous condition. *See Huckabee*, 19 S.W.3d at 422.

## CONCLUSION

It was Sova's burden to produce more than a scintilla of evidence demonstrating that Bill Miller had actual or constructive knowledge of an unreasonably dangerous condition on its premises, based on either a specific puddle that was on the floor long enough for Bill Miller to have discovered and rectified it or on the manner in which the condiment bar was generally maintained. Based on the evidence presented, no reasonable and fair-minded person could conclude that Bill Miller was actually aware or should have been aware that either the puddle on the floor or the condiment-bar area posed an unreasonably dangerous condition on its premises. *See King Ranch*, 118 S.W.3d at 751. Thus, Sova failed to satisfy her burden on either the first or second theory. Accordingly, we overrule Sova's only issue and affirm the summary judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: June 30, 2006