**BROOKSHIRE GROCERY COMPA-
NY, d/b/a Brookshire Food
Stores, Petitioner,**

v.

**Mary Francis TAYLOR, Respondent.**

No. 03–0408.

Supreme Court of Texas.

Dec. 1, 2006.

Rehearing Denied June 15, 2007.

Paul Miller, Troy Alan Hornsby, Miller, James, Miller & Hornsby, L.L.P., Texarkana TX, for Petitioner.

John Stephen Walker, The Moore Law Firm, L.L.P., Paris TX, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice BRISTER, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

Respondent Mary Francis Taylor sued petitioner Brookshire Grocery Co. for injuries she suffered to her knee when she slipped and fell on a piece of partially melted ice on a tile floor in front of a self-service soft drink dispenser in petitioner's grocery store. The trial court denied Brookshire's motion for summary judgment, granted partial summary judgment for Taylor on premises liability, and rendered judgment for Taylor for damages found by the jury. The court of appeals affirmed.[1] We address two questions: was the dispenser itself an unreasonably dangerous condition, or only the ice on the floor on which Taylor slipped, and if the latter, was there any evidence that Brookshire was or should have been aware of that condition? We reverse and render judgment for Brookshire.

A Brookshire employee testified that ice fell to the floor from the soft drink dispenser on a daily basis, that users were prone to spill ice from time to time, and that ice on the floor was a hazard to customers and had to be cleaned up regularly. There were three mats around the front of the dispenser, but they did not completely cover the tile floor, and Taylor slipped where the floor was bare. The Brookshire employee admitted that more mats could have been used and warning signs posted.

Brookshire was obliged to use reasonable care to protect Taylor, its invitee, from any unreasonably dangerous condition in its store of which it had actual or constructive knowledge.[2] Taylor argues that the dispenser itself, not just the particular piece of ice on which Taylor slipped, was an unreasonably dangerous condition, and that Brookshire was well aware of the risks the dispenser posed to customers. Brookshire argues that the ice on which Taylor slipped was the only unreasonably dangerous condition, and that there is no evidence it had actual or constructive knowledge that the ice was there. The trial court and court of appeals appear to have agreed with Taylor, although the court of appeals conceded that there was no evidence that Brookshire had actual or constructive knowledge of the ice on which Taylor slipped.[3]

■ Ordinarily, an unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place injury occurs, not some antecedent situation that produced the condition. Thus, for example, in *CMH Homes, Inc. v. Daenen*, we rejected the argument that stairs were unreasonably dangerous merely because the premises owner knew they would eventually become unstable with use.[4]

> There may be situations in which the deterioration of a structure or fixture is so rapid that there is an unreasonable risk of harm from the outset of its construction or installation, but this is not such a case.

> There is no evidence that the step and platform unit on which [injury occurred]

1. 102 S.W.3d 816 (Tex.App.-Texarkana 2003).

2. *Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex.2002).

3. 102 S.W.3d at 824.

4. 15 S.W.3d 97, 100–101 (Tex.2000).

was a dangerous condition from the inception of its use.[5]

Likewise, in *City of San Antonio v. Rodriguez*, we held that water on the floor of a basketball court could be an unreasonably dangerous condition, but not the leaky roof that would eventually allow water to drip onto the floor if it rained.[6]

> The leaky roof was not itself a dangerous condition; it could only cause a dangerous condition. The [owner] was not required to warn of leaks in the roof or repair them; it was required only to prevent the water that leaked through the roof from causing a dangerous condition.[7]

And in *H.E. Butt Grocery Co. v. Resendez*, we held that a grocery store's self-service display of loose grapes in a recessed bowl on a rimmed table standing on a non-skid floor and surrounded by mats and warning cones was not an unreasonably dangerous condition; rather, the grape on which the plaintiff slipped was the dangerous condition.[8]

An exceptional case was *Corbin v. Safeway Stores, Inc.*, where the Court held that a grocery store's self-service display of loose green grapes in an open, slanted bin above a bare, green linoleum floor was an unreasonably dangerous condition for which the store owner could be liable, even if it had no actual or constructive knowledge that a grape was on the floor where the plaintiff slipped.[9] What made the situation in *Corbin* different from *Resendez* was that because the store in *Corbin* admitted there was an "unusually high risk associated with its grape display",[10] a jury could have found that the display itself was a dangerous condition.

This case is not like *Corbin*. As we said in *Resendez*, "the mere fact that a store has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm."[11] No evidence suggests that the soft drink dispenser was set up in such a way that ice on the floor was a greater danger than one would ordinarily encounter with such dispensers, or that customers, though prone to spills, were any more prone around this dispenser. Taylor's arguments that there should have been more mats and warning signs are relevant to her contention that Brookshire did not exercise reasonable care, but they are not evidence that the dispenser itself was unreasonably dangerous.[12] Otherwise, similar evidence could be used to show that the entire grocery store was unreasonably dangerous, since it is almost always the case that something more could have been done to prevent a customer from being struck by an article falling off a shelf or from slipping on the floor. A condition is not unreasonably dangerous simply because it is not foolproof.[13]

---

**5.** *Id.* at 101.

**6.** 931 S.W.2d 535, 536–537 (Tex.1996) (per curiam).

**7.** *Id.* at 536.

**8.** 988 S.W.2d 218, 218–219 (Tex.1999) (per curiam).

**9.** 648 S.W.2d 292, 295–297 (Tex.1983).

**10.** *Id.* at 296.

**11.** *Resendez*, 988 S.W.2d at 219.

**12.** *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex.2000).

**13.** *Id.* at 102 ("To our knowledge, no court has ever suggested that if it is possible to construct buildings or fixtures with materials that are impervious to wear and tear, an owner or occupier has a legal duty to do so and is charged with knowledge of an unreasonably dangerous condition if it does not.").

The only unreasonably dangerous condition in this case was the ice on the floor. Brookshire did not have actual knowledge of the ice on which Taylor slipped, and we agree with the court of appeals that there is no evidence that the condition had existed long enough, the ice not having fully melted, for Brookshire to have constructive notice.[14]

The rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice is firmly rooted in our jurisprudence.... The rule emerged from our reluctance to impose liability on a storekeeper for the carelessness of another over whom it had no control or for "the fortuitous act of a single customer" that could instantly create a dangerous condition.[15]

Because Taylor adduced no evidence that Brookshire had constructive knowledge of the unreasonably dangerous condition that caused her harm, the ice on which she slipped, Brookshire was entitled to summary judgment.

Accordingly, we grant Brookshire's petition for review and without hearing argument,[16] reverse the judgment of the court of appeals and render judgment that Taylor take nothing.

Justice JOHNSON filed a concurring opinion.

Justice O'NEILL filed a dissenting opinion, in which Justice MEDINA joined.

Justice JOHNSON, concurring.

I join the Court's opinion and concur with the Court's judgment, but write to address an issue highlighted by the dissent: the difficulty of reconciling statements we made in, and the holding of, *Corbin v. Safeway*, 648 S.W.2d 292 (Tex. 1983) with other precedent from this Court. The difficulty breeds confusion as to exactly what an injured invitee must prove and what a premises occupier must defend against in cases such as the one before us.

The facts underlying *Corbin* are that Gary Corbin, a Safeway customer, slipped and fell on a grape near an open grape display in the produce aisle of a Safeway store. Corbin then sued Safeway, alleging the existence of three dangerous conditions in the store. The first condition was the specific grape on which he slipped. The second was the dirty and littered condition of the floor where he slipped. The third was the method in which Safeway displayed grapes in an open, slanted, self-serve bin above a linoleum floor. *Id.* at 296. The case went to trial and the trial court granted a directed verdict in favor of Safeway. The court of appeals affirmed. On appeal to this Court, we posed the question presented as

> whether an invitee who sustains personal injuries from slipping and falling in a store may recover damages by introducing evidence that a proximate cause of the fall was the storeowner's failure to use reasonable care to protect its customers from the known and unusually high risks accompanying customer usage of a self-service display of goods. We hold that such proof establishes a right to have a jury determine the storeowner's liability, even in the absence of evidence showing the storeowner's actual or constructive knowledge of the pres-

---

14. 102 S.W.3d at 824.

15. *Wal–Mart Stores, Inc. v. Reece,* 81 S.W.3d 812, 815–816 (Tex.2002).

16. Tex.R.App. P. 59.1.

ence on the floor of the specific object causing the fall.

*Id.* at 295.

We affirmed the court of appeals' decision that there was no evidence to support Safeway's liability as to the first and second conditions. In addressing the third condition, we stated that "Corbin's right to recover from Safeway depends on his showing Safeway's knowledge of the foreseeable harm of some *course of conduct or method of operation.* He is not required to prove one particular instance of negligence or knowledge of one specific hazard, as Safeway contends." *Id.* at 296 (emphasis added). We cited *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975) for our statement. But, *Rosas* involved a customer slipping and falling on a wet floor and we referred to a "condition" of the premises, not a "course of conduct or method of operation." Subsequent to our decision in *Corbin* we have specifically refused to eliminate all distinctions between premises condition claims and negligent activity claims. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992). However, we have not re-examined either *Corbin's* use of negligent activity language or its holding that a claim based on a dangerous premises condition can be asserted without showing the premises owner had actual or constructive knowledge of the specific condition causing the plaintiff's injuries.

The facts involved in suits by invitees against premises owners frequently are in question; the elements of a cause of action should not be. The parties do not ask us to re-examine or clarify *Corbin* in this case. We should do so in an appropriate case.

Justice O'NEILL, joined by Justice MEDINA, dissenting.

The Court concludes Brookshire could be liable for injury caused by an individual ice cube on an unmatted tile floor next to a drink dispenser, but as a matter of law cannot be liable for the manner of display that regularly caused ice to fall there. While I agree with the Court that Taylor presented no evidence Brookshire knew that the particular cube upon which Taylor slipped was on the floor and thus liability could not be imposed on that basis, I believe Taylor presented some evidence from which a jury could reasonably conclude that the manner in which the drink dispenser was set up caused ice to fall on the unprotected tile floor on a regular basis, creating a recurring dangerous condition of which Brookshire was aware. Because the Court concludes otherwise, I respectfully dissent.

Generally, in a premises liability case, the store owner must have knowledge of the dangerous condition itself, and not just the situation that creates a dangerous condition. *City of San Antonio v. Rodriguez,* 931 S.W.2d 535, 536–37 (Tex.1996) (per curiam). However, in *Corbin v. Safeway Stores, Inc.,* we acknowledged that in a slip-and-fall case, the dangerous condition may be defined more broadly than the particular substance on the floor. 648 S.W.2d 292, 296 (Tex.1983). For example, a display may qualify as a dangerous condition when the manner of the display itself creates an unreasonable risk of injury. *Id.*

In *Corbin,* Safeway displayed grapes in a slanted bin over a tile floor. Safeway acknowledged that it was fully aware of the manner in which the grapes were displayed and the potential risk to customers of grapes falling to the floor. *Id.* at 296. We held that this was some evidence from which a jury could conclude that the condition in which Safeway maintained its display posed an unreasonable risk of foreseeable harm for which Safeway could be held liable. *Id.* at 297. In *Corbin,* it was

the manner of the display, rather than an individual grape on the floor, that constituted a dangerous condition and exposed Safeway to liability. *Id.* at 296. We reiterated nearly a decade later that the knowledge requirement was met in *Corbin* because "Safeway did not have to know that a particular grape was on the floor at a particular time because it knew that the grapes would be on the floor due to the nature of the display." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex.1992).

Since *Corbin,* we have elaborated on displays as dangerous conditions, holding that "the mere fact that a store has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm." *H.E. Butt Grocery Co. v. Resendez,* 988 S.W.2d 218, 219 (Tex.1999) (per curiam). The Court relies upon this language from *Resendez* to support its conclusion that, as a matter of law, the soft-drink display here was not an unreasonably dangerous condition. And in an attempt to distinguish this case from *Corbin,* the Court concludes there is no evidence to suggest that Brookshire's drink dispenser was situated in such a way that ice on the floor was a greater danger than one would ordinarily encounter with such displays. I disagree.

The circumstances before the Court in *Resendez* differ from those presented here, which are more closely analogous to the *Corbin* situation. The display in *Resendez* contained a bowl filled with loose grapes for customers to sample. *Id.* at 218. The bowl was level, recessed approximately five inches below the table's surface, and had a three-inch railing surrounding its edges. *Id.* The entire produce section had a non-skid surface, floor mats were in place around the table on which the grapes were displayed, and there were warning cones near the display. *Id.* at 219. Con-

cluding the plaintiff had presented no evidence that the manner of display created an unreasonable risk to customers of grapes falling on the floor, we rendered judgment that Resendez take nothing. *Id.*

In the present case, on the other hand, Taylor presented evidence from which a jury could conclude that the manner in which the drink display was arranged frequently caused ice to fall on the exposed tile floor, creating a dangerous condition of which Brookshire was aware. The assistant store manager, Dewayne Jenkins, described the drink dispenser arrangement at the store. Beneath the dispenser was a mat which, when facing the machine, extended beyond the dispenser's left edge but, to the right, only lined up with the edge of the machine. In other words, the drink dispenser was not centered on the mat, extending only to the edge on the right side. Beyond the drink dispenser to the right was the deli section, which had two mats placed in front of the display counter from end to end. There was a significant gap between the drink and deli areas where the tile floor was unmatted and exposed; this was the area where Taylor slipped and fell on melted ice. Jenkins testified that the mat underlying the dispenser could have been wider so that it would have been harder for ice to "bounce" over to the exposed floor, and acknowledged that "a piece of ice didn't have to go very far at all to wind up on this area that was tile." Jenkins also testified that a mat could have been placed over the exposed area to keep people from slipping when ice migrated there. Finally, Sharon White, a deli clerk, testified that ice or water fell in the unprotected tile area on a regular basis, and that water on a tile floor poses a danger to customers. Unlike the plaintiff in *Resendez,* Taylor did present evidence that the drink dispenser was set up in a manner that presented an unreasonable risk of ice falling on the unprotected tile

floor. In my view, as in *Corbin,* a reasonable jury could infer from this evidence that Brookshire had knowledge of a dangerous condition that posed an unreasonable risk of harm.

In a case with similar facts, *National Convenience Stores, Inc. v. Erevia,* the court of appeals held that a barrel-type cold drink display was an unreasonably dangerous condition. 73 S.W.3d 518, 522–23 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). In *Erevia,* the store manager testified there was a heightened concern about water and ice around the self-service display, and that company policy suggested mats should be placed around the barrels. *Id.* at 523. Following our decision in *Corbin,* the court of appeals held that ice falling from barrels was a common problem and, because the store did not follow suggested safety precautions, the store owner had constructive knowledge of a dangerous condition. *Id.*

The Court claims our decision in *Rodriguez* supports the conclusion that the display in this case could not be a dangerous condition. 931 S.W.2d at 536–37. There, Rodriguez sued the City of San Antonio for injuries he sustained when he slipped in a wet spot on the floor while playing basketball. The wet spot resulted from a leak in the roof. The City admitted it knew the roof leaked, but denied any knowledge of water on the floor at the time Rodriguez slipped. We reversed a verdict in Rodriguez's favor based on a defective jury charge that erroneously implied the City had a duty to repair the roof. *Id.* at 536. However, we held that the premises owner did have a duty "to prevent the water that leaked through the roof from causing a dangerous condition." *Id.* Although the jury should have been instructed that the alleged dangerous condition was the water on the floor rather than the leaky roof, we held that knowl-edge of the leaky roof was evidence from which a jury might infer that the person in charge knew there would be water on the floor. *Id.* at 537.

Like the defendant in *Rodriguez,* Brookshire may not have been able to prevent ice from falling on the floor, but it had a duty to customers to prevent the ice that did fall from causing a dangerous condition. *Id.* at 536. Given the evidence that Brookshire was aware ice falling on the exposed tile floor was a continuous problem but did not provide additional matting or warning signs to make the area safe, a question of fact exists as to whether Brookshire had constructive knowledge of an unreasonably dangerous condition. Accordingly, the case should be remanded for trial. Because the Court renders judgment in Brookshire's favor as a matter of law, I respectfully dissent.