In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-256 CV


 ______________________


 

SHIRLEY BROWN, PERSONAL REPRESENTATIVE


OF THE ESTATE OF GENEVIEVE CIONEK, Appellant



V.



SHEILA MIGUEZ, Appellee






On Appeal from the 356th District Court


Hardin County, Texas


Trial Cause No. 44724






MEMORANDUM OPINION


 Sheila Miguez sued Genevieve Cionek for an injury Miguez sustained on Cionek's
premises. The jury found in favor of Miguez and awarded her damages. The trial court
signed a judgment based on the jury verdict. Because there is no evidence of an
unreasonably dangerous premises condition, we reverse the trial court's judgment and render
judgment that Miguez take nothing from appellant. (1) 

 Miguez, an employee of Texas Home Health, worked at Cionek's home as a home
health care provider. One of Cionek's sons had a wheelchair ramp constructed. Miguez
regularly washed the wooden ramp area with a hose. 

 Miguez alleged a premises defect. She testified she fell on the wheelchair ramp while
she sprayed and watered going up and down the ramp. Miguez explained the ramp originally
had a non-skid material ("rolled roofing") put on it to "cause traction . . . to keep it safe" and
keep her from slipping. As Miguez stated, the ramp "got slippery sometimes." She
explained that Cionek had her son remove the surface material from the ramp because the
grit from the surface was being tracked in the house and was ruining the carpet. Miguez
testified that after the removal of the "rolled roofing" surface, Cionek, her son Bobby, and
Bobby's wife Cindy discussed putting Astroturf on the ramp. They never did. 

 Miguez thought the roofing material should have been left on the ramp. Wanda
Cleveland and Sue Swain, employees of Texas Home Health, testified it would be safer to
have a ramp with some type of non-skid surface on it. Cionek testified Miguez was the one
who wanted the material removed from the ramp. 

 Miguez testified the fall happened while she was spraying water as she was going up
and down the ramp. She explained Cionek had instructed her to clean the ramp and showed
her how to do it. At the time of the fall, Miguez had been cleaning the ramp three times a
week for four or five months. Cionek disputed that she told Miguez to spray down the ramp. 
Cionek testified the ramp was not wet that day.

 Miguez described her fall on the ramp as follows:

 I walked out, got the hose, sprayed on the walk. Went up the ramp, sprayed
to the right, then turned around and was spraying to the left, was walking
down. And the ramp was kind of slippery from the water, you know, dripping
on it. My feet went out from under me. 


Miguez testified she went to the emergency room, and the emergency room report indicates
she injured her lower back and right knee. Initially, Miguez was on crutches. She described
pain in her back, down her leg, and in her right knee. Miguez had back surgery. 

 Miguez asserts the wheelchair ramp was unreasonably dangerous. She testified the
ramp was "slippery from the water" and had no traction material on it. In issue three of her
brief, appellant contends there is no evidence the wheelchair ramp itself "posed an
unreasonable risk of harm which led to the accident." Appellant argues the evidence Miguez
offered to establish this vital fact amounts to no evidence under the law. See generally City
of Keller v. Wilson, 168 S.W.3d 802, 810, 812-13 (Tex. 2005).

 An invitee in a premises liability case must plead and prove, among other elements,
that a condition on the premises posed an unreasonable risk of harm to the invitee. M.O.
Dental Lab. v. Rape, 139 S.W.3d 671, 675 (Tex. 2004). A premises owner has a duty to use
reasonable care to protect an invitee from an unreasonably dangerous premises condition of
which the owner had actual or constructive knowledge. Brookshire Grocery Co. v. Taylor,
222 S.W.3d 406, 407 (Tex. 2006) (citing Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812, 814
(Tex. 2002)). Conditions that present risks are not necessarily unreasonably dangerous. See,
e.g., M.O. Dental Lab v. Rape, 139 S.W.3d at 675-76 (mud and dirt on concrete slab);
Johnson County Sheriff's Posse, Inc. v. Endsley, 926 S.W.2d 284, 286-87 (Tex. 1996) (small
rocks in rodeo arena dirt); Brownsville Navigation Dist. v. Izaguirre, 829 S.W.2d 159, 161
(Tex. 1992) (ground soft and muddy when wet). A condition must present an unreasonable
risk of harm to be unreasonably dangerous. Brinson Ford, Inc. v. Alger, 228 S.W.3d 161,
162 (Tex. 2007) (holding as a matter of law the ramp in that case did not pose an
unreasonable risk of harm). Merely because an invitee sustains an injury on the premises
does not mean liability may be imposed on the premises owner. Dickson v. J. Weingarten,
Inc.,498 S.W.2d 388, 389 (Tex. Civ. App.--Houston [14th Dist.] 1973, no writ). 
Furthermore, a premises owner generally is not liable to an independent contractor for a
dangerous condition created by the independent contractor. Koch Ref. Co. v. Chapa, 11
S.W.3d 153, 155 (Tex. 1999). 

 The presence of a wheelchair ramp providing a homeowner access to her house is not
evidence, without more, of a condition that posed an unreasonable risk of harm. See
generally Brinson Ford, Inc., 228 S.W.3d at 161 (no evidence that ramp at car dealership
posed an unreasonable risk of harm). Generally, a wheelchair ramp has known, acceptable
risks. To support the jury's finding here, there must at least be evidence that some feature
of this ramp made it unreasonably dangerous and caused the fall. See generally Brookshire
Grocery Co., 222 S.W.3d at 408 (no evidence that soft drink dispenser itself was
unreasonably dangerous). Miguez indicated there were no handrails along the ramp, but she
did not assert their absence contributed to her fall or made the ramp unreasonably dangerous
for her use. There is no evidence the ramp itself was unstable, in disrepair, at too high a
pitch, installed improperly, or defective in design or construction. 

 Evidence that the ramp was slippery when wet, and that the "rolled roofing" material
had been removed from the ramp, does not by itself constitute legally sufficient evidence the
ramp was unreasonably dangerous before or after the roofing material was removed. See
Brookshire Grocery Co., 222 S.W.3d at 408. The danger associated with water on a floor,
or in this case a ramp, is commonly known and obvious. See Aleman v. Ben E. Keith Co.,
227 S.W.3d 304, 313 (Tex. App.--Houston [1st Dist.] 2007, no pet.). It is not out of the
ordinary for a surface to be slippery when wet. Miguez testified she knew the ramp was
slippery when she was spraying the water and knew that she could fall. She also testified she
did not think the ramp was unreasonably dangerous.

 Miguez argues, in the alternative, there is "evidence legally sufficient to show" that
Cionek affirmatively undertook a duty to put down another safety mat to replace the one
removed. Miguez testified there were discussions about another mat, but nothing was done. 
This does not establish that Cionek affirmatively undertook an independent duty to put down
another surface on the ramp, nor is it legally sufficient evidence that the ramp was
unreasonably dangerous without another mat. 

 Miguez explained she had been performing the same task for approximately four or
five months, but she had not fallen before. She acknowledged that on the day she fell, the
ramp "looked just like it did all the other days [she] had washed it and not fallen." Others
had used the ramp without incident. There is no evidence that anyone besides Miguez ever
fell on the ramp either before the roof material was put on the ramp or after the material was
removed. Nurse Sue Swain, who for years came to Cionek's residence twice a day, seven
days a week, testified she used the ramp every day. She stated she never had any problems
walking or running up the ramp even when it was wet from rain. Although Swain testified
a non-skid surface might make the ramp safer, this testimony is not evidence the ramp was
unreasonably dangerous without a special surface. Even if Cionek's testimony is correct and
the ramp was dry, the evidence presented at trial was not legally sufficient to establish that
the ramp was unreasonably dangerous when dry or that an unreasonably dangerous condition
caused her fall. See Brinson Ford, Inc., 228 S.W.3d at 161. 

 We sustain issue three. Because of our disposition of issue three, we need not address
appellant's remaining issues. We reverse the trial court's judgment and render judgment that
Sheila Miguez take nothing. 

 REVERSED AND RENDERED.

 _________________________________

 DAVID GAULTNEY 

 Justice


Submitted on June 13, 2007

Opinion Delivered October 4, 2007


Before McKeithen, C.J., Gaultney and Horton, JJ. 
1. Cionek died approximately eight months after Miguez filed suit. The suit continued with
Miguez's amended petition against Shirley Brown, the representative of Cionek's estate and
appellant in this appeal.