# Supreme Court of Texas

No. 21-0208

United Supermarkets, LLC,

*Petitioner*,

v.

Sherie McIntire,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**PER CURIAM**

In this premises-liability suit, a customer sued the premises owner after she sustained serious injuries from tripping over an approximately 3/4-inch divot in a grocery store parking lot. The trial court rendered summary judgment for the store owner, concluding that the defect that caused the accident "does not rise to the level of being an 'unreasonably dangerous condition' as a matter of law." The court of appeals reversed, holding that a fact issue exists as to whether the defect presented an unreasonable risk of harm. We agree with the trial court that the divot is not unreasonably dangerous as a matter of law.

Accordingly, we reverse the court of appeals' judgment and reinstate the judgment of the trial court.

United Supermarkets, LLC owns a Market Street grocery store in Frisco. On June 11, 2018, Sherie McIntire,[1] a regular customer, drove to Market Street to do her weekly grocery shopping. When she got out of her Ford F-250 truck's elevated cabin, one of her heels caught an approximately 3/4-inch divot in the parking-lot pavement.[2] McIntire's ankles buckled and she fell to the ground, breaking her foot and leg.[3]

McIntire sued United, asserting premises-defect claims. United filed traditional and no-evidence motions for summary judgment, asserting that McIntire had not adduced evidence showing that United had notice of the defect or that it posed an unreasonable risk of harm, and that in any case, the defect was open and obvious. In support of her response, McIntire submitted deposition testimony, photographs of the divot, a demonstrative video of the accident, United's policies and procedures, and an expert report written by a professional engineer and safety consultant. The trial court granted United's motions.

---

[1] Our spelling of McIntire's name conforms to the spelling of her name in the briefs and record.

[2] Based on McIntire's evidence, the divot appears to be more of a depression with gradually sloping edges. It is approximately 3/4 of an inch deep at the deepest point and approximately six inches long at its longest point.

[3] For summary-judgment purposes, we presume the divot proximately caused McIntire's fall. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985) (when reviewing a motion for summary judgment we take as true all evidence favorable to the nonmovant). McIntire asserts that she saw the parking space's white stripe, but not the divot, when she was jumping down from her truck.

The court of appeals reversed and remanded, holding that McIntire produced evidence sufficient to create a fact issue as to whether the defect was unreasonably dangerous. ___ S.W.3d ___, 2021 WL 389095, at *1 (Tex. App.—Dallas Feb. 4, 2021). Specifically, the court of appeals reasoned that McIntire provided evidence that the size and shape of the divot indicated it posed an unreasonable risk of harm and that United failed to clearly mark the defect. *Id.* at *3. It also referenced McIntire's expert's report, which reflected that United may have run afoul of safety standards and stated that the defect could "cause a pedestrian's foot to unexpectedly rotate or flex," causing injury. *Id.*

United petitioned this Court for review. It argues that it is entitled to summary judgment because, among other things, the divot that caused McIntire's fall was not unreasonably dangerous as a matter of law. We agree.

United owed McIntire, an invitee, a duty to "make safe or warn against any concealed, unreasonably dangerous conditions of which [it was], or reasonably should [have been], aware" but which she was not. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 474 (Tex. 2017).[4] Whether a specific condition is unreasonably dangerous is ordinarily a fact question. *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970). However, we have held that some particularly innocuous

---

[4] To prevail in a premises-liability case, the invitee plaintiff must show that (1) the owner had actual or constructive knowledge of the condition at issue; (2) the condition was unreasonably dangerous; (3) the owner did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; and (4) the owner's failure to reduce or eliminate the unreasonable risk of harm proximately caused the plaintiff's injuries. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).

or commonplace hazards are not unreasonably dangerous as a matter of law. *See, e.g.*, *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 415 (Tex. 2010) (holding that a patch of ice causing a patron to slip and fall was not unreasonably dangerous as a matter of law); *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (holding that a pedestrian ramp did not pose an unreasonable risk of harm as a matter of law); *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408-09 (Tex. 2006) (holding that the wet floor in front of a self-serve soft-drink display was not unreasonably dangerous as a matter of law); *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 676 (Tex. 2004) (holding that naturally occurring mud was not unreasonably dangerous as a matter of law).

A condition is unreasonably dangerous if "there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck*, 451 S.W.2d at 754. In conducting this analysis, we have previously considered whether the relevant condition was clearly marked, its size, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, and whether it was naturally occurring. *See, e.g., id.*; *Alger*, 228 S.W.3d at 163; *Taylor,* 222 S.W.3d at 408; *M.O. Dental Lab*, 139 S.W.3d at 675-76.

In this case, application of those factors overwhelmingly demonstrates that the divot did not pose an unreasonable risk of harm. It measured less than an inch deep, and nothing in the record indicates it yielded other complaints or injuries or was "unusual" relative to other

4

small pavement defects. If anything, the defect was profoundly *ordinary*.

Additionally, we cannot conclude that "a person of ordinary intelligence[] should have anticipated" McIntire's accident and the severity of her injuries. *Nixon*, 690 S.W.2d at 550. Tiny surface defects in pavement are ubiquitous and naturally occurring.[5] Accordingly, reasonable invitees know that parking lots are not perfectly flat and even, and they use caution when exiting their vehicles. Indeed, to expect otherwise would impose an incredibly costly burden on businesses, which would have to identify and remedy every small crumble in the surfaces surrounding their premises. *See, e.g.*, *M.O. Dental Lab*, 139 S.W.3d at 675-76 (holding that muddy conditions are not unreasonably dangerous as a matter of law because "[m]ost invitees in Texas will encounter natural conditions involving ordinary mud regularly"); *Fair*, 310 S.W.3d at 413 (noting that "holding a landowner accountable for naturally accumulated mud would impose a heavy burden").

---

[5] Surface irregularities like potholes and divots form when precipitation seeps into pavement, causing it to weaken and deteriorate, and the holes get larger as vehicles run over the weakened areas. *See* City of Houston, *Houston Potholes Tracker: Frequently Asked Questions, What is a pothole?*, http://www.houstontx.gov/potholes/faq.html#:~:text=A%20pothole%20forms%20when%20water,5%20feet%20by%205%20feet. Like an "accumulation of mud on a man-made surface," which may occur "without the assistance or involvement of unnatural contact," Texas invitees will encounter small divots like the one at issue here regularly and accidents are "bound to happen, regardless of the precautions taken by landowners." *M.O. Dental Lab*, 139 S.W.3d at 676. Accordingly, invitees will generally be "as aware as landowners of the existence of [such conditions]" and "will often be in a better position to take immediate precautions against injury." *Id.*

In reaching the opposite conclusion, the court of appeals made much of United's failure to mark the divot. It noted that Chris Trevino, the store manager, testified that he regularly surveyed the Market Street parking lot and used upside-down grocery carts as barricades for particularly pernicious potholes. 2021 WL 389095, at *4. Trevino testified that he noticed the offending divot but did not think it constituted a hazard, and he did nothing to highlight its danger to potential customers. *Id.* But the fact that Trevino thought the defect too insignificant to warrant demarcation does not support the conclusion that the divot posed an unreasonable risk of harm. To the contrary, it indicates that Trevino believed the opposite to be true.

The court of appeals also relied on the following testimony from McIntire's expert, a professional engineer and safety consultant, in holding that a fact issue existed as to the defect's dangerousness:

- "[A] walking surface unevenness or depression of such size and depth as in this matter can cause a pedestrian's foot to unexpectedly rotate or flex and cause injury as occurred when Mrs. McIntyre's [sic] foot landed in the hole as she exited her pickup truck." *Id.* at *3.
- "Changes in elevation (rises or depressions) in walking surfaces of the magnitude present in this matter due to the damaged section of the exterior concrete walkway have long been recognized in the codes, standards, and authoritative safety literature as presenting a serious and unreasonable risk of pedestrian missteps." *Id.*

6

United argues that the court of appeals should not have even considered the expert report because it (1) ran afoul of Texas Rule of Evidence 702 by addressing issues within the jury's common knowledge, (2) opined on pure questions of law, and (3) was conclusory. McIntire contends that United waived any objections to the report's admissibility by failing to raise them in the trial court. *See Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014) (holding that preservation requires both a timely objection and a ruling) (citing TEX. R. APP. P. 33.1).

Regardless of whether McIntire's report was properly considered, it does not alter our conclusion. We have previously held that expert testimony does not create a fact issue as to whether a condition is unreasonably dangerous when undisputed, material facts demonstrate that it is not. *See, e.g.*, *Alger*, 228 S.W.3d at 162-63 (holding that a ramp was not unreasonably dangerous as a matter of law despite expert testimony to the contrary). Indeed, testimony that a condition *could* injure an invitee is not evidence that it poses an *unreasonable* risk of harm. Landowners are not "insurer[s] of [a] visitor's safety," and they are not obligated to make the premises "foolproof." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 769 (Tex. 2010) (quoting RESTATEMENT (SECOND) OF TORTS § 344 cmt. f (AM. LAW INST. 1965)); *Taylor*, 222 S.W.3d at 408. The divot was small, unremarkable, and had posed no previous safety concerns. These undisputed facts demonstrate that it was not unreasonably dangerous as a matter of law.

Additionally, while *applicable* safety codes may be relevant to assessing whether a condition poses an unreasonable risk of harm, McIntire failed to submit evidence showing that the safety codes

referenced in the expert report applied to the Market Street parking lot, either when the lot was constructed or on the date of McIntire's accident. And United makes a compelling, unrebutted case that they did not.[6] Therefore, assuming the export report was appropriate summary-judgment evidence, it does not raise a fact issue as to whether the divot was unreasonably dangerous.

In sum, we hold that the divot that allegedly caused McIntire's injuries was not unreasonably dangerous as a matter of law.[7] We emphasize that in so holding, we make no broad pronouncements on whether pavement defects constitute unreasonably dangerous conditions, and we do not opine on whether another larger or differentially situated defect could pose an unreasonable risk of harm. However, the defect at issue here did not. Accordingly, without hearing

---

[6] First, McIntire's expert cites safety codes that simply were not in effect at the time of the accident. For example, the expert report cites the 2012 International Building Code. But in 2018, when the accident took place, Texas law provided that "the International Building Code, *as it existed on May 1, 2003*," was the governing municipal building code for the state of Texas. Act of May 2, 2005, 79th Leg., R.S., ch. 389, § 4, 2005 Tex. Gen. Laws 1079, 1080 (amended 2021) (codified at TEX. LOC. GOV'T CODE § 214.216(a) (emphasis added)). The report neither includes nor cites the 2003 version of the Code. The expert report also cites code provisions that manifestly do not apply to this case. For example, it references the 2009 National Fire Protection Association 101 Life Safety Code. But this standard applies to "[m]eans of egress" for "buildings"—which does not include parking lots. Moreover, this standard is used for the inspection of "state-owned" and state-leased buildings by State Fire Marshals, not for inspection of private buildings (or parking lots) by city fire marshals or local fire departments. *See* TEX. ADMIN. CODE §§ 34.303(b), 417.0081.

[7] In light of this holding, we need not and do not address United's other issues, including whether the defect was open and obvious as a matter of law.

8

oral argument, we reverse the court of appeals' judgment and reinstate the judgment of the trial court.  TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** June 17, 2022