**Reversed and Remanded and Majority and Dissenting Opinions filed December 6, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00045-CV

---

### MARYAM MOHAMMADI, Appellant

### V.

### ALBERTSONS, LLC D/B/A RANDALL'S; ALBERTSONS COMPANIES, LLC D/B/A RANDALL'S AND RANDALL'S FOOD MARKETS, INC. D/B/A RANDALL'S; RANDALL'S FOOD & DRUGS L.P., D/B/A RANDALL'S, Appellees

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2017-51885**

---

### DISSENTING OPINION

I respectfully dissent. There was no jury charge error made by the trial court in separating out "should have known" from "knew," and there was no error in predication. Even if there was error, the error was harmless because there is no evidence that Randall's "knew" of a dangerous condition. The majority's harm

analysis is wrong (and the same point is inadequately argued by Mohammadi in her brief).

## A.    Knew vs. Should Have Known

The trial court asked the jury whether Randall's should have known of the dangerous condition and the jury answered "No." The jury was told not to answer the question as to whether Randall's knew about the dangerous condition unless it had answered "Yes" to "should have known." The trial court and Randall's both believed that it would be logically impossible for a jury, under the facts of this case, to answer "No" to "should have known" while answering "Yes" to "knew." I agree with that logic.

Case law is clear that "knew" is a higher standard than "should have known." *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 236 (Tex. 1992). The majority acknowledges that. An invitee only needs to show "should have known" while a licensee must show actual knowledge—"knew." Under these facts, if Randall's knew about the dangerous condition, then Randall's also "should have known" about it. While the majority goes on to discuss constructive knowledge versus actual knowledge (useful in case analysis), it is not what the jury was actually asked. The majority cannot cite to a single case where a premises owner actually knew about a dangerous condition but somehow should not have known about the condition. Nor can the majority cite a case where a premises owner has actual knowledge of a dangerous condition but somehow does not have constructive knowledge of the dangerous condition too. Those situations are illogical. Even if such a factual situation could be imagined, there are no such facts in this case.

**B.    Harm Analysis**

Mohammadi failed to show how the evidence supported a "Yes" answer to the question of whether Randall's knew of the dangerous condition. Jury charge error is subject to a traditional harm analysis. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). To properly preserve a point of error, an appellant must show not only that the trial court erred but that the error was harmful. Mohammadi acknowledges that charge error is harmful if it relates to a contested, critical issue. *Id.* at 856. She acknowledges that there must be some evidence to support the issue. Her sole argument and citation to evidence on harm is as follows:

> During trial, the Appellant introduced actual videotape evidence showing a Randall's employee placing a damaged and leaking product in a grocery cart a mere foot away from where Maryam Mohammadi fell eight minutes later. (RR, Vol. 11, Exhibit 29). Appellant also introduced photographs depicting the incident recovered from Randall's security video. (RR, Vol. 11, Exhibits 21-28). Appellant's undisputed evidence proved that the most likely, if not the only possible source of the liquid, that caused Maryam Mohammadi to slip and fall originated from the damaged product leaking from the bag the Randall's employee put into the cart.

Plaintiff's Exhibit 29 does not show any employee of Randall's doing anything before the accident. Mohammadi has failed to properly cite to the evidence in the case. *See* Tex. R. App. P. 38.1(i).

Defendant's Exhibit 1 is fifteen minutes long and shows an employee placing an item in a grocery cart while holding what looks like a paper towel. The video does not show a leaking bag. Another employee was right next to her at the time. He testified at trial that he did not see a leaking bag. It is this exhibit that the majority relies on. Many people and employees pass by the location where Mohammadi fell

and no one seemed to see any water on the floor. No water can be seen on the video. Mohammadi fell eight minutes after the bag was put in the cart.

Mohammadi and the majority assume that the bag was leaking and was the source of the water on the floor—but the video does not show that. No such depiction of a leaking bag appears on the video. No one testified that the bag was leaking. And there was disputed testimony as to whether there was water on the floor at the time of the fall. At most the evidence shows a possibility that there was some water on the bag, because the employee had what appeared to be a towel in her hand. This is insufficient for actual knowledge. *See Wal-Mart Stores, Inc. v. Gonzales*, 968 S.W.2d 934, 938 (Tex. 1998) (meager circumstantial evidence from which equally plausible inferences may be drawn is speculative).

The majority admits that there is no evidence that a Randall's employee observed any liquid on the floor where appellant fell. The employee in the video testified that he did not see anything leaking. That should end the inquiry. Instead, the majority embarks on a "what if" analysis that Mohammadi did not make, concluding that Randall's had a bad policy of putting double bagged leaking items into a wire grocery cart, and this imputes knowledge of a dangerous condition to Randall's.

The majority relies upon the *Corbin* case, where a self-service grape display was found to be unreasonably dangerous because the premises owner had knowledge of the foreseeable harm of some course of conduct or method of operation. *See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983).[1] The problem with

---

[1] The majority relies upon *Corbin* despite the fact that the Supreme Court has stated that *Corbin* is a rare case. *See Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006).

relying upon *Corbin* is that the evidence is drastically different. And Mohammadi never claimed her case fell under the *Corbin* analysis.

The evidence in *Corbin* established that the store put non-slip mats in front of the grapes because the store knew that customers would frequently knock grapes off their stems or drop them on the floor, where they created a dangerous condition. There is no comparable evidence in this case. There is no evidence that employees knew that putting returned goods in a wire shopping cart led to spills on the floor. There is no evidence that the employee on the video knew she was placing a leaking bag in the grocery cart. The employee standing next to her did not know it. In fact, there is no evidence from the video that the bag itself was leaking.

Every case cited by the majority analyzes evidence under a knew or should have known standard. The majority cannot point to any case analyzing only actual knowledge that supports the majority's position.

The Supreme Court and this court have repeatedly said that actual knowledge requires reports of prior injuries or reports of potential danger. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 392 (Tex. 2016). Actual knowledge means actual knowledge—not merely the possibility that a dangerous condition could develop over time. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 413 (Tex. 2008); *City of Houston v. Gilbert*, —S.W.3d —, 2022 WL 3589179 (Tex. App.—Houston [14th Dist.] 2022, no pet. h.). The evidence detailed by the majority is not even a scintilla of evidence of actual knowledge.

There are no reports of potential danger from the policy of placing returned items in a grocery cart. There is no evidence of actual knowledge in this case. The

trial court was not required to submit that element and there is no error in this case. I dissent.


/s/    Tracy Christopher
          Chief Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.