**Opinion issued January 30, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00241-CV

_____

**RICHARD CHALMERS, Appellant**

**V.**

**PRAG PATEL, RAMADA COLLEGE STATION, PRAG PATEL D/B/A RAMADA COLLEGE STATION, AND RAMADA WORLDWIDE, INC.,**
**Appellees**

---

**On Appeal from the 361st District Court**
**Brazos County, Texas**
**Trial Court Case No. 18-000785-CV-361**

---

## MEMORANDUM OPINION

Appellant Richard Chalmers appeals from the trial court's grant of summary

judgment in favor of appellees Prag Patel, Ramada College Station, Prag Patel d/b/a

Ramada College Station, and Ramada Worldwide, Inc. ("RWI").[1] In two issues on appeal, Chalmers argues that the trial court erred by entering summary judgment. We affirm.

## Background

In April 2016, Chalmers and his wife drove from their home in Louisiana to College Station, Texas, to attend a baseball game at Texas A&M University. They reserved a room at the Ramada College Station hotel, but when they arrived, the only room available was one of four wheelchair-accessible rooms. Chalmers accepted the room. Relevant to this appeal, the primary distinction in a wheelchair-accessible room is that the shower floor is even with the bathroom floor to allow a guest to roll a wheelchair into the shower. A shower curtain separated the shower stall from the remainder of the bathroom.

On Saturday morning, Chalmers and his wife prepared to go to the baseball game. Chalmers' wife showered in the hotel room. When she was finished, Chalmers saw water on the bathroom floor outside the shower, so he used hand towels to dry the floor. He then called down to the front desk to request more towels. No one answered, so he walked downstairs to request towels from the front desk, but he did

---

[1]     Pursuant to its docket-equalization authority, the Texas Supreme Court transferred this appeal from the Tenth Court of Appeals to this Court. *See* Misc. Docket No. 23-9017 (Tex. Mar. 21, 2023); *see also* TEX. GOV'T CODE § 73.001(a) (authorizing transfer of cases). We are unaware of any conflict between the precedent of that court and of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

not see or speak to any employee in the lobby. Chalmers went back upstairs and took a shower. Water again splashed on the bathroom floor. As he exited the shower and walked across the bathroom floor, he slipped and fell on the water and injured himself.

Chalmers sued appellees and others for premises liability.[2] He alleged that appellees "failed to use reasonable care to protect [him] from the known and unusually high risk accompanied by allowing the dangerous condition to exist where individuals showered, bathed and took care of personal needs in a handicapped room with no mats, without grip floor pads, or non-skid surfaces on the bathroom floor."

More than a year after Chalmers filed suit, appellees filed a motion for summary judgment asserting both no-evidence and traditional grounds.[3] Appellees first argued that they were not proper parties to the lawsuit because they did not own or control the premises. They contended that BSC Hotel Development, Ltd. owned

---

[2] Chalmers also named other parties as defendants, including Trishul Enterprises, LLC; 242 Hotel Development, LLC; Oasis Island Hospitality, LLC; and Prag Patel as representative of each of these three entities. Chalmers later non-suited his claims against these defendants, and they are not parties to this appeal.

[3] Appellees filed three summary judgment motions. They filed the first motion jointly in April 2019, but they had not received a ruling by September 2022. In September 2022, RWI filed a traditional motion for summary judgment which referenced the prior motion, provided "additional case law in support of summary judgment," addressed the no-evidence points raised in the prior motion, and relied on the same evidence attached to the prior motion. The remaining appellees filed a separate no-evidence motion for summary judgment. Each motion argued that no evidence showed appellees had knowledge of an unreasonably dangerous condition. For ease of reading, we address the various motions and responses together.

and controlled the hotel premises but had not been named as a party. Appellees supported this argument with Patel's deposition testimony, an affidavit from a senior vice president for RWI, and a license agreement between BCS Hotel Development and RWI.

Appellees also argued that no evidence established they had actual or constructive knowledge of an unreasonably dangerous condition. They relied on an excerpt from Chalmers' deposition testimony stating that he "didn't talk to anybody" when he needed more towels to clean up the water on the floor before he showered. They also relied on an excerpt of Patel's deposition testimony. Patel testified that he managed the hotel and was in charge of hiring employees, including maid staff. Patel denied any knowledge of a guest ever having slipped and fallen on a wet floor in the hotel or complaining about a slip and fall, and he denied that anyone had slipped and fallen during the nine years the hotel had existed.

Chalmers responded to the summary judgment motion. He primarily argued that appellees owned or controlled the hotel premises. He also argued that appellees had constructive knowledge of an unreasonably dangerous condition because he attempted to notify hotel employees that water was on the floor before he showered and subsequently slipped and fell.

In a later response, Chalmers identified "the poorly placed and poorly installed shower curtain" as the unreasonably dangerous condition because the

shower curtain allowed "water to pool on the main floor of the bathroom, rather than staying in the shower stall where it will drain away properly." Chalmers relied on a declaration from an engineer who opined that the "improperly installed shower curtain in the bathroom" caused water to exit the shower and spill onto the floor, thereby creating "a premises hazard[.]"

The trial court granted the motions for summary judgment in two separate orders.[4] This appeal followed.

## Premises Liability

In two issues on appeal, Chalmers argues that the trial court erred by entering the orders granting appellees' summary judgment motions. We consider both issues together.

## A.    Standard of Review

We review a trial court's summary judgment ruling de novo. *Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024) (per curiam) (quotation omitted); *Torres v. Pasadena Refin. Sys., Inc.*, 695 S.W.3d 392, 402 (Tex. App.— Houston [1st Dist.] 2022, no pet.) (en banc). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Weekley Homes*, 691 S.W.3d at 915 (quotation omitted);

---

[4]    The first order granted the motion filed by Patel, Ramada College Station, and Patel as the representative of Ramada College Station. The second order granted the motion filed by RWI.

5

*Torres*, 695 S.W.3d at 402. Where, as here, the trial court grants summary judgment without specifying the grounds, we must affirm if any of the grounds asserted in the motion are meritorious. *Torres*, 695 S.W.3d at 402.

A party may combine both no-evidence and traditional grounds in a motion for summary judgment. *Id.*; *see* TEX. R. CIV. P. 166a(c), (i). If a party asserts both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first consider whether summary judgment was proper under the no-evidence standard. *Torres*, 695 S.W.3d at 402; *see* TEX. R. CIV. P. 166a(i). If we conclude that the trial court did not err in granting summary judgment under the no-evidence standard, we need not reach whether it erred in granting summary judgment under the traditional standard. *Torres*, 695 S.W.3d at 402.

To prevail on a motion for no-evidence summary judgment, the movant must establish that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i); *Torres*, 695 S.W.3d at 402. If the movant meets this burden, the burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact on each element challenged in the motion. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *Torres*, 695 S.W.3d at 402; TEX. R. CIV. P. 166a(i). The nonmovant meets this burden by producing more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements.

6

*Torres*, 695 S.W.3d at 402. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Torres*, 695 S.W.3d at 402.

To prevail on a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Torres*, 695 S.W.3d at 402. When a defendant moves for summary judgment, he must either conclusively negate at least one essential element of the plaintiff's cause of action or conclusively establish each essential element of an affirmative defense. *Torres*, 695 S.W.3d at 402. If the movant meets this burden, then the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Id.*

**B.    Governing Law**

The duty owed by a Texas landowner to property visitors varies depending on the legal status of the visitor. *See Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (per curiam). Here, the parties do not dispute that Chalmers was an invitee to the Ramada College Station hotel where he allegedly slipped and fell. *See id.* ("[A]s a guest of the motel, Lopez qualifies as an invitee for purposes of a premises liability

7

claim."). A landowner "owes invitees a duty to exercise ordinary care to protect them from not only those risks of which the owner is actually aware, but also those risks of which the owner should be aware after reasonable inspection." *Id.*; *see Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 316 (Tex. 2024) (per curiam) ("[L]iability to an invitee can attach if the defendant knew of the danger *or* reasonably should have known of it."). To establish a premises liability claim against a hotel owner, a hotel guest must prove that:

(1)    the hotel owner had actual or constructive knowledge of some condition on the premises;

(2)    the condition posed an unreasonable risk of harm;

(3)    the hotel owner did not exercise reasonable care to reduce or eliminate the risk; and

(4)    the hotel owner's failure to use reasonable care proximately caused the guest's injuries.

*Motel 6*, 929 S.W.2d at 3; *accord Mohammadi*, 689 S.W.3d at 317 (approving jury instruction for premises liability to invitee containing similar language).

The Texas Supreme Court has described "the existence of actual or constructive knowledge of a premises defect" as "a threshold requirement" for an invitee's premises liability claim. *Motel 6*, 929 S.W.2d at 3. A landowner must have actual or constructive knowledge of an unreasonably dangerous condition before the landowner's duty to protect the guest will arise. *Id.* at 3–4; *see Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) (describing landowner's duty as "a duty to

8

make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not").

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident." *Mohammadi*, 689 S.W.3d at 317 (quoting *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 397 (Tex. 2016)). Constructive knowledge "can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection." *Id.* (quoting *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000)). Constructive knowledge "can be established by facts or inferences that a dangerous condition could develop over time." *Mohammadi*, 689 S.W.3d at 317 (quoting *Sampson*, 500 S.W.3d at 397). This "time-notice rule" applies to constructive-knowledge aspects of a premises liability claim and requires "proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002).

A landowner generally has no duty, however, to warn invitees of hazards that are open, obvious, or known to the invitee. *Austin*, 465 S.W.3d at 203; *Watanabe v. Summit Path Partners, LLC*, 650 S.W.3d 112, 126 (Tex. App.—Houston [1st Dist.] 2021, no pet.). "[L]andowners are neither insurers of a visitor's safety nor required

to make a premises foolproof." *Pay & Save, Inc. v. Canales*, 691 S.W.3d 499, 503 (Tex. 2024) (per curiam); *see Reece*, 81 S.W.3d at 814.

**C.    Analysis**

On appeal, Chalmers primarily argues that appellees owned or controlled the premises and therefore had a duty to protect him from unreasonably dangerous conditions on the premises. For example, he argues that the alleged condition— which he characterizes as "a poorly placed shower curtain" in a wheelchair-accessible shower—was not open and obvious or commonplace, and thus appellees had a duty to protect him from the condition. Chalmers also argues that appellees had knowledge of an unreasonably dangerous condition because they created the condition. This latter issue is dispositive of this appeal.

The Texas Supreme Court has recently reiterated that when considering whether there is evidence of the knowledge element, "we must first correctly identify the 'danger' or 'condition' at issue." *Mohammadi*, 689 S.W.3d at 318. An "unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place injury occurs, not some antecedent situation that produced the condition." *Id.* (quoting *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006)).

In *Mohammadi*, for example, a customer slipped and fell on a wet floor in a grocery store, and she sued the store for failing to warn her of an unreasonably

10

dangerous condition. *Id.* at 315–16. The customer alleged that a store employee had placed a wet plastic bag in a shopping cart, water leaked onto the floor, and she slipped and fell in the water. *Id.* A jury determined that the store owner did not have constructive knowledge of an unreasonably dangerous condition. *Id.* at 316. Based on this finding, the jury did not consider whether the store owner had actual knowledge of a dangerous condition. *Id.* at 315. The customer appealed, arguing that the jury should have answered the actual-knowledge question despite finding that the store owner lacked constructive knowledge. *Id.* at 317.

In considering whether any evidence of actual knowledge existed, the court stated that the first step is to "correctly identify the 'danger' or 'condition' at issue." *Id.* at 318. To identify the relevant condition, the court reiterated the rule from *Brookshire Grocery*: the "unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place injury occurs, not some antecedent situation that produced the condition." *Id.* (quoting *Brookshire Grocery*, 222 S.W.3d at 407). For example, the *Brookshire Grocery* court had held that ice on the floor—not the drink dispenser from which "ice fell to the floor . . . on a daily basis"—was the relevant condition. *Id.* (quoting *Brookshire Grocery*, 222 S.W.3d at 406–09). The court had also previously held that water on the floor of a basketball court could be an unreasonably dangerous condition, but not the leaky roof that

11

would eventually allow water to drip. *Id.* (citing *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536 (Tex. 1996) (per curiam)).

Applying the *Brookshire Grocery* rule, the court concluded that the wet floor on which the customer slipped—and not the leaking grocery bag that the store employee had placed in the shopping cart—was the relevant condition. *Id.* The court explained:

> [E]vidence that an employee knew a leaking bag was placed in a shopping cart cannot demonstrate [the store's] actual knowledge of the wet floor on which [the customer] slipped. Perhaps [the store] *should have known* of the wet floor because a wet floor is a highly likely consequence of a leaking bag, but the jury has already answered the constructive-knowledge question in favor of [the store].

*Id.* at 319–20.

Here, the parties dispute whether the relevant condition is the water on the floor of the bathroom or the shower curtain which allowed the water to puddle on the floor. Applying the *Brookshire Grocery* rule, we conclude that the relevant condition is the water on the bathroom floor. The summary judgment evidence conclusively establishes that Chalmers slipped and fell on water on the bathroom floor, not on the shower curtain. Thus, the water on the floor is "the condition at the time and place" that Chalmers' injury allegedly occurred. *See id.* at 318 (quoting *Brookshire Grocery*, 222 S.W.3d at 407). The shower curtain was merely "some antecedent situation that produced the condition." *See id.* (quoting *Brookshire Grocery*, 222 S.W.3d at 407).

12

We next consider whether the summary judgment evidence raised a fact issue on whether appellees had actual or constructive knowledge of water on the bathroom floor of Chalmers' hotel room when he slipped and fell. We conclude that it did not.

Chalmers testified at his deposition that he first saw water on the bathroom floor after his wife showered. Chalmers cleaned up the water with some hand towels. Then he called the front desk to request more towels. No one answered, so he walked down to the front desk. He did not see any employees at the front desk, obtain any additional towels, or notify anyone about the water on the bathroom floor. Chalmers returned to his room and took a shower, and water again puddled on the bathroom floor. When Chalmers exited the shower, he slipped and fell on the water on the floor.

Patel, the hotel manager, testified that he did not know of any slip and falls on a wet floor or complaints about them in any guest room bathroom. He also testified that no one had fallen on a wet floor in the hotel during its nine years' existence.

No evidence established that appellees actually knew water was on the bathroom floor when Chalmers slipped and fell. *See id.* at 317 (quoting *Sampson*, 500 S.W.3d at 397). According to Chalmers' own testimony, only he (and perhaps his wife) knew about the water on the floor before he slipped and fell. Patel denied any knowledge of water on the floor. Thus, there was no evidence of actual knowledge.

13

Likewise, no evidence established that water had existed on the bathroom floor long enough that appellees should have discovered it upon reasonable inspection as required to establish constructive knowledge. *See id.* (quoting *CMH Homes*, 15 S.W.3d at 102–03). There is no evidence that any water was on the bathroom floor when Chalmers and his wife checked in to the hotel room or at any time before Chalmers' wife took a shower. Chalmers did testify that both times the shower was used in his hotel room, water leaked onto the floor. But there is no evidence showing how long the shower curtain had been in use in Chalmers' hotel room or how long water had been escaping the shower and sitting on the floor. Patel denied any knowledge of anyone slipping and falling on a wet floor at the hotel. In sum, there is no evidence that appellees should have known that water was on the bathroom floor of Chalmers' hotel room when he slipped and fell.

Rather than argue that appellees had actual or constructive knowledge of the water on the floor, however, Chalmers instead argues that appellees created the condition by installing an inadequate shower curtain, and their creation of the condition imputes knowledge of the condition to them. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 266 (Tex. 1992) ("Proof that the premises owner or occupier created a condition which poses an unreasonable risk of harm may constitute circumstantial evidence that the owner or occupier knew of the condition."). As stated above, however, we disagree with Chalmers that the shower curtain was the

relevant condition. Because Chalmers did not present any evidence that appellees created the water on the floor or otherwise had any knowledge of it, the trial court properly granted summary judgment.

We conclude that Chalmers did not meet his burden to produce a scintilla of evidence showing that appellees had actual or constructive knowledge of an unreasonably dangerous condition. We therefore hold that the trial court did not err by granting summary judgment in favor of appellees.[5]

We overrule Chalmers' appellate issues.

**Conclusion**

We affirm the judgment of the trial court.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

---

[5] Based on our holding that summary judgment was meritorious on the ground that no evidence existed of the knowledge element of Chalmers' premises liability claim, we need not consider the remaining arguments under either a traditional or no-evidence standard. *See Torres v. Pasadena Refin. Sys., Inc.*, 695 S.W.3d 392, 402 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (en banc); TEX. R. APP. P. 47.1.